McDonald & Rew vs. Forsyth et al.

McDONALD & REW vs. JACOB FORSYTH, et al.

Under the statute of this State an attachment cannot issue in an action of *tort*—process of attachment is confined to actions upon contracts.

## ERROR to St. Louis Circuit Court.

### STATEMENT OF THE CASE.

The defendants were owners of the steamboat "Pioneer," in March, 1849, and the plaintiffs were owners of a warehouse, standing at Beardstown, on the bank of the Illinois river. The plaintiffs sued defendants in case alleging that through the negligence, carelessness and fault of the defendants' servants, managing said boat unskilfully, the boat was run against the said warehouse, and prostrated its walls, and removed the building from its foundation, and greatly damaged it.

The proper affidavit was made and the steamboat Pioneer attached as the property of non-residents, and to bring them within the jurisdiction of the courts of this State, and proper bond filed for their protection.

The defendants moved the circuit court to dissolve the attachment.

1. Because suit did not lie by attachment for such cause of action.

McDonald & Rew vs. Forsyth et al.

2. Because the plaintiffs are not creditors, nor the defendants debtors, mutually.

3. Because there is no indebtedness from the defendant to the plaintiff.

The court granted this motion and the plaintiffs excepted.

The suit was then dismissed on a stipulation between the parties that no exception should be taken for such dismissal, and no errors assigned thereon in this court—and accordingly, the only error assigned is the dissolving the attachment.

CROCKET & CASSON, for plaintiffs in error.

The non-residence of the plaintiff furnishes no ground of distinct consideration. The question is to be regarded as if the action were brought by a citizen of this State. Posey vs. Buckner, 3 Mo. Rep., 413; Graham vs. Bradburry, 7 Mo. R., 281.

Whereon there is a "debtor," there must, of necessity, be a "creditor." The artificial definition of the word "debtor" is evidently too narrow, having reference to an obligation to pay an amount ascertained by judgment, or by a sealed instrument, or in the case where the action of debt is specially given by statute, &c. It will be conceded, and the practice in this State proves, that this attachment lies upon simple contract, express or implied; and the terms "debtor and creditor" are used in actions of assumption universally, and on an account current with interest account; attachment also lies *for damages for breach of contract*. Brady's vs. Hill et al., 1 Mo. 226.

It is clear also, that it will lie whereon a technical "action of debt" would lie, for wherever there is, in the language of the law, a *debt*, there is necessarily a "debtor."

In all the following cases, therefore, there is a "debtor," for in them all, "an action of debt" lies.

Where there was no contract for the amount of compensation for work and labor done, the damages being wholly unliquidated, debt lies.

And for an unliquidated penalty given by statute, and penalties for malfeasance.

Also on a *quantum meruit* where the damages are wholly matter of proof. Thompson vs. French, 10 Serg. 452; Rockwell's case, 11 Ohio, 130; Jacob vs. U. S.; 1 Brock, 520; Van Deusen vs. Blum, 18 Pick., 229.

Debt lies on a sealed instrument, where an *unliquidated demand*, reducible to a certainty, is sought to be recovered. Wetumpka vs. Hill, 7 Ala., 772.

Also on a bond to secure good behaviour, and the performance of official duty, although the damages can only be ascertained by proof *e extra*.

Also, generally upon statutes for penalties, and for damages regulated therein. Bacon Ab't. "Debt."

Also, generally upon a special *contract*, but not on a *promise*, for this last is *assumpsit*. Simonton vs. Barret, 21 Wend., 362.

Debt lies for the treble demages given by statute for damage to real estate, &c., though the amount is wholly unliquidated, until the trespass and actual amount of damage are proved in court at the trial. Papin vs. Ruelle, 2 Mo. 26.

The word "debt" denotes any kind of a just demand. "Debtor is one who may be constrained to pay what he owes." "Creditor is he who has the right to require the fulfilment of an obligation or contract." Bouv. L. D. "Debtor;" do "Creditor."

An endorser, who is merely liable to pay on a contingency, is a "creditor" under assgt. law, Duval vs. Raisin, 7 Mo. 449.

An unliquidated claim for damages is a "debt" within the meaning of the statute of Massachusetts, making individual members liable for the "debts" of manufacturing corporations, a decision not merely affecting *remedies*, as in this case, but rights and liabilities. Milldam Foundry vs. Hovery, 21 Pick. 454.

Actions on the case for damages, and assumpsit on an implied promise, are so nearly allied hardly to be distinguished in law.

McDonald & Rew vs. Forsyth et al.

Where *trover* will lie, assumpsit will also lie, if the plaintiff chooses to waive the tort. Johnson vs. Strader, 3 Mo., 254.

In New York, under the insolvent laws, a discharge operates upon debts arising *ex-delicto* as well as *ex-contractu.* Claims arising from trespass have been decided to be discharged, under that statute, using the same language as this in question, which is an authority very much in point. Latham vs. Dezo, 19 Wend., 629, and note thereto.

The construction supported by the preceding arguments is also enforced by the language itself so fully as to leave no doubt of the legislative intention. Ch. 11, sect. 1, sects. 1 and 2, sects. 51 and 52, sects. 53 and 54, sects. 2, 51.

But the position of the defendant is shown by the statute to be tenable only before a justice of the peace, or on a motion for an attachment subsequent to the commencement of the suit, and the distinction taken in the act shows conclusively the meaning of the statute. It limits in no respect the jurisdiction of the circuit court in matters of attachment originally. Art. II, sect. 1; art. 1, sect. 41

It does limit it in attachments pending suit. Sec. 41, art. I, (q. v.)

And it does limit justices of the peace to the precise position taken by the defendant; i. e. that it applies only to actions arrising "ex-contractu." Art. II, sec. 1; art. I, section 64, (q. v.)

The limitation in the last instances proves the freedom from the like limitation, (by impli-cation,) in the first.

It is only the verdict of the jury which can ascertain the truth of the affidavit of indebted-ness, and the court cannot anticipate it by an order.

POLK, for defendants.

I. The only question in this cause is, whether a writ of attachment could be legally issued? I maintain it could not. Code of 1845, p. 133, sects. 1, 2, 3, 6, 41, 64; 1 Tidd's Practice 122, 144, 146; also 150, 151.

NAPTON, J., delivered the opinion of the court.

The question in this case is whether a plaintiff in an action on the case for a tort has a right under our statute to an attachment.

The plain and obvious construction of the statute is, in our opinion, against the right to an attachment except in actions upon contracts. It is not our province to determine whether this distinction is a wise one, if it is manifest that the legislature have adopted it. There may be, as has been contended, many cases were damages for a wrong done is the object of the suit, in which the plaintiff's right to this extraor-dinary process of the law might be maintained upon principles of ex-pediency and justice, whilst it must be admitted, that there are many others, in which the propriety of withholding the attachment is quite as obvious. A distinction had to be drawn, and the line fixed by the statute is probably about as satisfactory as any other which could have been adopted.

The first section of our attachment law provided that *creditors* may

sue their *debtors* by attachment, in certain specified cases. Upon the use of these general terms of creditor and debtor is founded all the argument which can be made to support the position of the plaintiff in error    I regard the terms as sufficiently definite, to exclude all idea of embracing within the law any demands except such as grow out of contracts. The words do not, in ordinary acceptation, nor in strict legal parlance, apply to any other class of demands. It is true, that the state law has made demands, not founded upon contract, debts, which were not so originally, as in certain statutory penalties recoverable by an action of debt; but this is only an exception to the general rule, and it does not prove that all other demands or claims of a similar nature, are debts, and create the relation of debtor and creditor.

But without entering upon any critical examination of these terms, I think, that the subsequent provisions of the act, taken together or viewed separately, are a legislative interpretation of the meaning of those terms as used in the first section of the act, and sufficiently limit their application to the class of cases already alluded to. The first forty sections of the law are upon the subject of original attachments, the forty first section then commences with a series of provisions for attachments in the progress of a suit, and reads thus : "Any plaintiff in an action of debt, covenant or assumpsit, which shall have been commenced by summons, and without original attachment, may, at any time pending the suit, and before final judgment, sue out an attachment in such action on filing an affidavit and bond as required in cases of original attachment."

What motive could there be for limiting these auxiliary attachments, if original attachments were permitted in all cases? I cannot conjecture any plausible reasons for making such a distinction. The words plaintiff and defendant are substituted for creditor and debtor, merely for convenience, and the use of these words rendered it necessary to limit their general meaning by specifying the forms of action, to which it was intended to confine the process. The change was a natural one, and I do not understand the words plaintiff and defendant to have any other meaning than the words creditor and debtor in the first section. But if we look further, we see this same distinction running through the whole law.

The 64th section points out the jurisdiction of the several courts—a matter regulated altogether by the amount involved. "The circuit court and justices of the peace shall have concurrent jurisdiction in attachment causes, where the demand sworn to is not less than fifty dollars, nor more than one hundred and fifty dollars, and shall be evidenced

by a bond or note for the direct payment of money, and where the demand sworn to should be less than fifty dollars nor more than ninety dollars, and shall be founded on a contract other than a bond or note." Nothing is said here about actions ex-delicto, in some of which justices of the peace had jurisdiction. If they were embraced in the first section of the law, no reason can be perceived why justices of the peace should not have shared in this jurisdiction, where the amount in controversy did not exceed that to which the law regulating these courts had already limited them.

The same remark will apply to the first section of the second article. In this the jurisdiction of justices in attachment cases, is specially defined. It is admitted that no power is given to them to issue attachments in any action *ex delicto*. No mention is made of such actions. Justices of the peace had jurisdiction in actions of trespass, to the amount of fifty dollars, and concurrent jurisdiction with the circuit courts in such actions, where the damages claimed were between twenty and fifty dollars.

If any action founded on a tort is embraced within the first section of the attachment laws, all such actions must fall within the same construction, and we shall then have a plaintiff in an action for slander entitled to his attachment. This is so contrary to the general spirit of the act itself and so little in accordance with justice or propriety, that we would naturally expect so important an innovation to be clearly defined and not left to nice constructions.

Judgment affirmed.