### IN

# THE SUPREME COURT

### OF

## THE STATE OF MISSOURI,

### MARCH TERM, 1858, AT ST. LOUIS.

CABLE *et al.*, Plaintiffs in Error, v. McCUNE *et al.*, Defendants in Error.

1. A demand against a corporation for damages for the loss of a steamboat through the negligence of its agents is not a *debt* of the corporation within section 18 of the first article of the act concerning corporations, (R. C. 1845, p. 234,) which makes the stockholders jointly and severally liable if the corporation fail to give notice annually of all the "existing debts" of the corporation.

*Error to St. Louis Court of Common Pleas.*

The object of this action, which was commenced August 21, 1854, is to subject the defendants to personal liability as stockholders of a corporation called "The St. Louis Marine Railway and Dock Company, established and organized under an act of the general assembly, approved January 18, 1849." (See Sess. Acts, 1849, p. 144.) The petition sets forth substantially that in and prior to August, 1851, the defendants were, and thenceforward continued to be, stock-

holders in The St. Louis Marine Railway & Dock Company, a corporation created by an act of the general assembly, approved January 18, 1849; that at the same time plaintiffs were the owners of a certain steamboat called the James Hewett; that the said corporation was the proprietor of a certain marine railway, dock, &c., and then held itself forth as ready, prepared and furnished with good and sufficient agents, dock, machinery, works and means for raising and repairing steamboats, and especially said steamboat James Hewett; that in consideration of a certain sum said corporation agreed to raise said steamboat free from the water, in the dock of said corporation, in a condition to permit the repairs, and thereafter to deliver said steamboat to the owners thereof again in good and sound condition as received and repaired, and to do the same in a good, safe and workmanlike manner; that said corporation did not perform its undertaking; that the steamboat was delivered to the corporation for the purposes aforesaid August 17, 1851; that by reason of the insufficiency of the docks, machinery, &c., and by reason of the want of skill, care and due diligence on the part of said corporation, its agents and servants, the said boat was stove in and broken, and before she was raised out of the water and in a condition to be repaired was precipitated over the side of said dock into the Mississippi river and sunk in deep water, and rendered utterly worthless and totally lost; that on the 25th day of October, in the year 1851, the plaintiffs instituted an action against the said corporation for the recovery of the damages sustained by them by reason of the non-performance of the aforesaid contract; that in that action they recovered a judgment against the corporation November 23, 1853, for $18,080, which judgment still remains unsatisfied, an execution issued thereon having been returned "*nulla bona;*" that from the time of the establisment of said corporation, up to and long after the making and breach of said contract as above set forth, the corporation did not, nor did any of its officers, agents or servants, give notice, in any newspaper printed in the county of St. Louis, of all the ex-

Cable v. McCune.

isting debts of said corporation, as required by law; that by reason of the non-performance of the contract aforesaid plaintiffs have sustained damages in the sum of $18,085, for which and interest they ask judgment.

Defendants, in their answer, admit the recovery as alleged of the judgment against The St. Louis Marine Railway & Dock Company in the month of November, 1853; admit that upon the rendition of that judgment the relation of debtor and creditor was established between plaintiffs and the corporation; but deny that prior to the rendition of the judgment any such relation existed. They allege that the action resulting in said judgment was brought for the alleged misfeasance, negligence, unskillfulness and remissness of the agents and servants of the corporation in respect of the steamboat James Hewett, which allegation was denied by said corporation, and upon which allegation and denial the issue was joined which resulted in the verdict on which said judgment was rendered. Defendants deny that the liability of the corporation to the plaintiffs for and on account of the sinking of the James Hewett constituted a " debt" in any proper sense of the term, either popular or technical; and say that it was impossible for the said corporation, in making publication of existing debts, to mention and enumerate among them a claim for damages the legal validity of which the corporation wholly disputed and repudiated; that it appears from the record of the judgment in the case of Cable et al., v. St. Louis Marine Railway & Dock Company and the pleadings therein, that the said action was not brought upon the con tract between the owners of the James Hewett and the said corporation, but proceeded upon the negligence, misfeasance and unskillfulness of the agents of the corporation; that all the debts of the corporation existing prior to January 17, 1852, have been fully paid and satisfied; that upon said last mentioned day, and afterwards in each year during the con tinuance of the corporation to do business and have an office for the transaction of business, the said corporation did give notice, as required by law, of all existing debts of the corpo-

ration; that in 1853 also notice was given as required by law; that in the month of May, 1853, all the property and effects of the corporation, of whatever kind, were sold at public sale to satisfy the debts of said corporation, and all the assets and effects were consumed and exhausted by said sale and in paying said debts; and since the month of May, 1853, the said corporation has had no place of business whatever, nor any property; nor has any board of directors or other officers been since that time chosen to take charge of any of the affairs of said company, nor has said company since that time had any affairs to take care of.

The cause was submitted to the court upon the petition and answer and the following agreement: "In this case all the facts set up in the answer respecting the publication of notice by the directors, and the payment of all previous debts by the company (excepting the claim of the plaintiffs for the loss of the James Hewett steamboat) which accrued prior to the 17th of January, 1852, are admitted. It is also admitted that in May, 1853, all the property and effects of the corporation, of whatever kind, were sold at public aution to satisfy the debts of the corporation owing, and that after said sale the said company had no office or place of business, or any election of officers, and has not since that time (May, 1853) done or attempted to do any business as a corporation. And thereupon the cause is submitted to the court upon the pleadings and this agreement, the record in the case of Cable et al., v. St. Louis Marine Railway & Dock Company being also in evidence."

The petition in this action (Cable v. St. Louis M. R. & D. Co.) which was commenced at the February term, 1852, of the St. Louis court of common pleas, set forth that plaintiffs were, in August, 1851, the owners of the James Hewett; that the corporation was the owner of a marine railway and machinery, &c., and held itself out to the public as ready and prepared, &c., for doing the work of raising and repairing steamboats, and especially the James Hewett, which, in consideration that plaintiffs would pay a certain sum, defen-

dant undertook to raise from the water, repair and redeliver to plaintiffs again in good and sound condition as received and repaired, and to do the same in a good, safe and workmanlike manner; that defendant did not perform said promise; that the boat was delivered to defendant on the 17th of August, 1851; and that, by reason of the insufficiency of their dock and the want of skill and care on the part of the agents of defendant, the boat was broken, stove, sunk and ruined, to the damage of the plaintiffs, &c. The answer of the corporation set forth that the loss complained of arose from inevitable accident and not from any want of skill or care on the part of the corporation or its agents. On the issue thus formed there was a trial, and a verdict and judgment for plaintiffs, which was affirmed by the supreme court. (See 21 Mo. 133.) The judgment was for $18,080, and was rendered November 23, 1853.

The court held that the plaintiffs could not recover. A motion for a review was made and overruled.

The 18th section of the first article of the act concerning corporations, approved March 19, 1845, (R. C. 1845, p. 234,) is as follows: " Every corporation hereafter created shall give notice, annually, in some newspaper printed in the county where the corporation is established, and in case no paper is printed therein, then in the nearest paper, of the amount of all the existing debts of the corporation; which notice shall be signed by the president and a majority of the directors; and if any of the said corporations shall fail to do so, all the stockholders of the corporation shall be jointly and severally liable for all the debts of the company then existing, and for all that shall be contracted before such notice shall be given."

*Drake*, for plaintiffs in error.

I. The 18th section of article 1 of the act concerning corporations is unquestionably in its nature remedial. The familiar principle that remedial statutes are to be liberally construed, to suppress the mischief and promote the remedy, fully

applies. The defendants do not deny that there was a contract between the owners of the boat and the company ; but, on the contrary, in stating " that the action (Cable v. St. L. M. R. & D. Co.) was not brought upon the contract between the owners of the James Hewett and the said corporation," it is admitted that there was a contract. The gist of the action against the company was the contract of the company. The same contract is also the gravamen of this action. In both the breach of the contract is averred to have resulted from the insufficiency of the docks, machinery, works and means by the company provided, and from the want of skill, care and due diligence on the part of the company and its agents in the premises. In the action against the company, the defendant, not denying the existence of the contract, or its breach, took issue upon this insufficiency, want of skill, &c., and the issue was found against it. It was an immaterial issue, relating merely to the cause of the breach, and not disputing, but admitting, the fact. So in this action, where the contract and the breach thereof are alleged and not denied, it is sought to tender again an immaterial issue in regard to the ground of the recovery against the company. But suppose there was no express contract between the owners of the boat and the company, it is admitted that the boat was delivered to the company to be docked, repaired and redelivered to the owners. The law implied a contract. This implied contract was broken ; whether through malfeasance, non-performance or misfeasance is wholly unimportant.

II. Previous to the publication of the required notice the stockholders stood in the position, in law, to the world, of members of an unincorporated copartnership, and were neither guarantors nor sureties, but principals. They were mere individuals, with a corporate capacity for certain purposes, but without the exemption from personal liability usually enjoyed by stockholders in a corporation. The law prescribed the condition on which this position might be changed, viz., the publication of the notice ; but they chose not to avail themselves of it. They had it fully in their power to relieve themselves from

all personal liability, but they would not. Their incorporation enabled them to carry on, as a corporation, a particular business, to use a given name, to have a common seal, and to do other things in a corporate capacity; but as to those who transacted business with them, and as to the community at large, they were to every intent only persons represented in their individual characters by certain officers and agents appointed and employed by them, and responsible to all parties with whom, through those officers and agents, they contracted. The law never intended to confer on them personal immunity from liability, unless they performed a certain act; but, on the contrary, declares and imposes individual liability up to the time that that act should be done. It is, then, clearly consonant with the letter and spirit of the law that they shall be regarded as principals, and subject to all the responsibility attaching to that character. (See Allen v. Sewell, 2 Wend. 327; 6 Wend. 335; 2 Hill, 269; 2 Denio, 123; Bailey v. Bancker, 3 Hill, 188; Corning v. McCullough, 1 Comst. 47.)

III. The demand of plaintiffs against the company was a debt within section 18. In the month of August, 1851, the company was liable to the plaintiffs for the value of their boat. All the facts necessary in law to create and fix this liability existed at that date; it simply remained to fix its amount. This was done by the judgment in November, 1853, which related back to and was based upon the state of facts existing in August, 1851. This liability was, in August, 1851, a debt of the company within the meaning of the statute, and having been contracted before any publication was made as required by the law was binding on the defendants as stockholders. The statute was remedial and requires a liberal construction. The word "debt" should not be construed in its strict legal sense. The word "debt" is universally employed as expressing whatever one man *owes* another in any form of liability arising out of contract. This is its "general and popular use"—its "natural, plain, obvious ordinary and familiar signification and import. (See the lexicographers—Johnson, Walker, Barclay, Bailey, Richardson,

Webster, Worcester and Tomlin; Bouvier's Inst. § 575; Gray v. Bennett, 3 Metc. 522.) The law of suits by attachment throws no little light on this subject. The question would necessarily arise as to what is a *debt* that would authorize a suit by attachment. In New York, where the plaintiff was required to swear that the defendant was indebted to him, the court said it did not follow that the demand is to be so certain as to fall within the technical definition of a debt. Being indebted is synonymous with owing. It is therefore sufficient if the demand arise on contract. The court held that an attachment would lie in an action founded on a bill of lading, whether the goods shipped were not delivered or were delivered in a damaged condition. (Lenox v. Howland, 3 Caines, 323; 3 Barb. 229; see also Hunt v. Norris, 4 Martin, 517; Peter v. Butler, 1 Leigh, 285; Roelofson v. Hatch, 3 Mich. 277; also 2 Bell's Comm. 319.) In Massachusetts, under a statute requiring every corporation to give notice, annually, in some newspaper, of the amount of all assessments voted by said corporation, and actually paid in, and all existing debts, and declaring that if any corporation should fail to comply, the members thereof should be personally liable for any debt then due, the meaning of the word *debt* was considered in connection with a question of the competency of a witness. The action was in assumpsit, against a corporation, for unliquidated damages for breach of contract. The corporation offered as a witness a person who was one of its members when the cause of action arose; but it appeared that no notice had been published as required by the statute, and his admissibility was contested on the ground of his personal liability for the demand of the plaintiff against the company. The court held him, for that reason, incompetent as a witness. (Mill Dam Foundry v. Hovey, 21 Pick. 417, 455; see also Carver v. Braintree Manuf. Co. 2 Sto. 432.)

IV. The judgment obtained by the plaintiffs against the company is the measure of their recovery in this action, and conclusively establishes the amount for which the defendants are liable. (Slee v. Bloom, 20 Johns. 669; Moss v. McCul-

Cable v. McCune.

logh, 7 Barb. 279; Daneby v. Brown, 24 Verm. 197, 209; Bank of U. S. v. Dallam, 4 Dana, 574.)

*Gantt* and *Thomas & Sharp*, for defendants in error.

I. The controversy turns entirely upon the meaning of the word "debt" as employed in the 18th section of the first article of the act concerning corporations. (R. C. 1845, p. 234.) The demands for which, in default of publication, the stockholders are to be made liable, are of the same kind with those of which the publication should take notice, and no others. The word "debts" is used, *de industria*, as a less comprehensive word than claims demands, or rights of action; and its meaning, both in popular language and among professional men, is well ascertained as something very distinct from choses in action. There was no debt owing by the corporation to the plaintiffs on account of the sinking of the James Hewett until the rendition of the judgment on the 23d of November, 1852. No action of *indebitatus assumpsit* or debt would have lain against the corporation upon the facts stated in the petition filed to the February term, 1852. The contract to repair the vessel was mere inducement. The gist of the action was the malfeasance of the agents of the corporation, and the action was in substance *ex delicto*. (Acks v. Ball, 14 Mo. 396; Com. Dig. tit. Debt; Chitty on Plead. 374, 123; 13 Mo. 549.) Until November, 1853, the corporation wholly denied its liability by reason of the matters stated in the petition of plaintiffs, and stoutly contested that liability in a suit at law. The damages claimed for the misfeasance, &c., were in the strictest sense of the term unliquidated. To require the directors to acknowledge, and even to *proclaim*, a debt on account of such an affair, would be equivalent to taking from them all chance of a successful defence. Either the claim of the plaintiffs for the loss of the James Hewett is a *debt* (prior to judgment) and should be notified as such in its annual advertisement, or it was not such a claim as could be enforced against the stockholders for want of an advertisement during the year preceding the

misconduct out of which the claim grew. Publication was duly made in 1852 and 1853, and all demands accruing prior to January 17, 1852, had, with the exception of that of plaintiffs, been fully paid. The legal acceptation of debt is a sum of " money due by a certain and express agreement." (3 Black. Comm. 154-5.) Debt is by no means so broad a term as *demand* or *claim*. A release of all demands or of all claims would discharge all debts but not *e converso*. (2 Thomas' Coke, p. 362, note B; Jacob, L. Dic. tit. Debt; Bac. Abr. tit. Debt, A.) The idea that until publication the corporators are in the position of an unincorporated company is utterly untenable. There is no color for it. The statutes construed in the cases cited on the part of plaintiffs in error are different from the one now before this court.

NAPTON, Judge, delivered the opinion of the court.

Our opinion in this case is based entirely upon the penal character of the statute we are called upon to construe.

The corporation is required to publish an annual statement of their condition for the information of the public, and a failure to do so renders the stockholders responsible for a specified class of demands existing prior to or at the time of such publication. The object is to inform the public, who expect to have dealings with such corporations, of their probable responsibility. This liability, in the event of there being no required publication, does not depend upon the actual injury which the failure to publish may have occasioned in a given case, but is absolute, dependent only on the proof of publication or no publication. Such a statute can be regarded in no other light than a penal one ; and accordingly such was the view taken by this court of some of its provisions less penal than the one we are now considering, in the case of Kritzer v. Woodson, 19 Mo. 827.

As no publication was made in this case of any kind previous to the claim now sued on, it is useless to inquire into the character of the claims or demands which such a publication

ought to embrace. It is not perceived that the corporations would be more embarrassed in stating claims against them for contested unliquidated damages than they would be in stating the debts due upon plain notes, the whole or parts of which might be disputed. Such a difficulty might be readily settled by holding the corporation responsible for the event. If willing to risk this, the claim could be omitted ; but if the claim was ultimately established, the publication would be defective in the meaning of the law.

The question, however, here is, what class of demands is embraced within the words " debts contracted ?" Our legislature did not go the length which others have in fixing the liabilities of the stockholders of these manufacturing corporations. They did not enact, as in many other states it is enacted, that the stockholders should be responsible for every liability established against the corporation, and which its assets turned out insufficient to meet. Such statutes as these, creating a general and determined liability not dependent on circumstances, becoming as it were a part of the very essence of the charter, may reasonably admit of a very different construction from a law which seems to recognize the general principle of individual irresponsibility subject to a very limited exception, and only ventures to hold out such responsibility as a penalty for a failure on the part of its managers to perform certain acts directed in the law and supposed to furnish some advantages to the public. The statute, which Judge Story construed in Carver v. Braintree Man. Co. 2 Story, 432, was of this remedial character. That act declared that every member of the manufacturing company named should be liable in his individual capacity for all debts contracted whilst he was a member. There was no penalty for an omission or a commission ; it was simply a recognition of the individual liability principle on the face of the charter. Called upon to construe such a charter, Judge Story held it to be remedial, not penal, and so viewing it he gave the word " *debt*," which was the term used, a very lib-

eral and extensive signification, to forward the manifest purposes of the law and the interest of society.

Had our legislature taken the same step and boldly inserted such a provision in all their charters of this class of corporations, Judge Story's views, forcible and reasonable as they are, ought to have great weight in determining the construction of such a statute. Judge Story concedes that the interpretation he gives to the word "debts" is a very loose one, and in short is making it synonymous with "demands." He substituted for the words "debts contracted," the phrase "dues owing" or "liabilities incurred," regarding them as essentially equivalent expressions. The result was that a demand founded on tort was equally within the meaning of the act with a debt liquidated or unliquidated. We do not feel ourselves authorized, upon well settled and long established principles, to take this liberal view of the word debts when used in our statute. Although the language is the same in the two statutes, ours is manifestly highly penal in its nature, whilst the Massachusetts act was considered by Judge Story as a remedial one. The demand sought to be enforced in the present action is certainly not a debt in the legal acceptation of the term, and it is, to say the least, doubtful whether it could be so regarded in its popular acceptation. The defendants are entitled to the benefit of such doubts. The popular meaning of a term may very properly be resorted to in ascertaining its construction in a purely remedial statute, and the plain objects of such laws ought not to be defeated by a narrow and technical definition. Unfortunately there are some words—and this word "debt" is perhaps one of them—the popular meaning of which is unsettled and fluctuating and hard to be ascertained. Where there is room for doubt and the statute is penal, the safer rule is to adhere to that limited and definite sense to which long established legal usage has restricted it.

The liability of the St. Louis Marine Railway and Dock Company to the plaintiffs was not a debt within the legal acceptation of that term as declared by Blackstone and other

writers of established authority. It was not " a sum of money due by certain and express agreement." Whether the suit against the company which resulted in the judgment sought to be enforced against the defendant was one which would properly fall within the class of actions considered as founded on contract, or in that class which is based upon tort, is a more difficult question to determine, if it was important that it should be determined at all. In the division of actions made by Blackstone, it would probably be considered as founded on contract ; for his definition of actions upon implied contracts is comprehensive enough to embrace almost every action on the case, except slander, libel, assault and battery, and similar actions. In his sixth subdivision of actions upon implied contracts, Blackstone includes a variety of actions for what he terms breaches of implied duty or trust, which would comprehend almost every case of damage imaginable. This court, upon previous occasions, have treated actions like the present as substantially founded on tort, although a breach of contract is stated as inducement to the action. (Acks v. Ball, 14 Mo. 396 ; McDonald & Rew v. Forsyth, 13 Mo. 549.) So in New York, Judge Nelson, in the case of Heacock v. Sherman, 14 Wend. 58, considered the action as one for damages upon a tort and not arising upon contract, although, upon Blackstone's division of actions, that case, which was for the loss of a horse by reason of the failure of a corporation to keep a bridge in repair, might very well have been considered as an action for damages arising out of contract. There was an implied contract that the company should keep the bridge in repair, and by reason of their failure to comply with their obligations the damage resulted, and in this way the case might be said remotely to be founded on contract. But the real gist of the action, in that case as in this, was a tort ; namely, the negligence and misfeasance of the corporation's agents, and the insufficiency of the bridge in the one case, and of the dock in the other, by which the damage complained of was sustained. Such damages can hardly, in popular acceptation,

be regarded as debts. Certainly it is by no means clear that the legislature meant to embrace such demands.

We regret that in the examination of this subject we have been without any precedent to guide us. The only case directly in point is the one cited from Massachusetts ; (21 Pick. 455 ;) and that is undoubtedly against the conclusion to which we have arrived. An opinion of a court of such acknowledged ability as the supreme court of Massachusetts is entitled to great respect, but the circumstances under which that opinion was delivered detract somewhat from its importance as authority. The question arose incidentally upon the exclusion of a witness, and it would seem from the curt manner in which the court disposed of it that not much importance was attached to its decision. No investigation was made into the matter upon principle or authority, and it is easily inferred from a perusal of the case, which turned principally upon other points, that the question here considered was entirely a subordinate one, and its decision either way probably had no material influence upon the result. The statute under which the question arose seems also to have differed from ours in the use of the word "contracts" as well as debts ; although the court did not, so far as I can perceive, attach any particular importance to this word. Under these circumstances, the case, as a mere precedent, does not appear entitled to great weight, notwithstanding the respectability of the court which decided it. On the other hand, the case of Heacock v. Sherman, 14 Wend. 58, is an authority, not only directly at variance with the decision of the supreme court of Massachusetts, but also entirely irreconcilable with Judge Story's views in Carver v. Braintree Manuf. Co. 2 Story, 432. Judge Nelson, who delivered the opinion of the court in that case, refused to give a construction to the words "debts contracted" that would embrace a demand for damages in an action founded on a tort. The other authorities referred to in the argument of this case are upon statutes essentially different from the one now under consideration.

I am not apprised of any views of sound public policy which ought to exempt the stockholders of the class of corporations, such as in this instance was sued, from all the individual responsibility which attaches to the members of ordinary mercantile partnerships; much less have I been able to perceive any reason for a distinction in the kinds of liabilities to which they ought to be subjected in the event of the insolvency of the corporation. The conclusion, therefore, to which we have arrived, has been, so far as I am concerned, reached with reluctance; but I am the better reconciled to it by a consideration that the provision in question is of comparatively recent origin, and is contained, not in the charter of the company, but in the general corporation law; and to go a step beyond the strict letter of the law might occasion surprise and perhaps produce injustice.

The other judges concurring, the judgment is affirmed.*

---

* A motion for a rehearing was made in this case and overruled.