## AVERY & SON v. WILLIAM C. McCLURE ET AL.

### [47 South. 901.]

CORPORATIONS. *Debts. Stockholders. Directors. Personal liability. Code 1906, §§ 909, 923, 924. Patent. Infringement of. Torts.*

The infringement of a patent is a tort, and a judgment against a corporation for damages resulting therefrom is not a debt within the meaning of:—

(a) Code 1906, § 909, providing that every stockholder of a corporation shall be individually liable for its debts contracted during his ownership of the stock to the extent of any unpaid balance on his subscription therefor, the liability to continue for one year after his transfer of the stock, and that any creditor of the company may sue therefor; nor

(b) Code 1906, § 923, providing that the directors of an insolvent corporation assenting to a diversion of its capital stock or the payment of a dividend, and the stockholder receiving a dividend, shall be jointly liable to the existing creditors of the corporation to the extent of the withdrawal or payment, with interest; nor

(c) Code 1906, § 924, limiting the amount of debts which a trading corporation should contract and making the directors who contracted debts in excess thereof personally liable therefor.

FROM the chancery court of Lowndes county.

HON. JAMES F. McCOOL, Chancellor.

Avery & Son, a corporation, appellant, was complainant in the court below; McClure and others, appellees, were defendants there. From a decree in defendants' favor the complainant appealed to the supreme court. The opinion of the court states the facts.

*W. H. Clifton,* for appellant.

The appellees' plea in the court below is insufficient in law, and appellant should have been awarded a decree final against the appellees. *Railway Co. v. Brooks,* 69 Miss. 168, 13 South. 847; *Richberger v. Express Co.,* 73 Miss. 161, 18 South. 922.

It is the settled law in Mississippi that in causes arising *ex*

*delicto* the tort may be waived, and recovery be had in assumpsit on the implied contract, growing out of the principle that. *ex acquo atque bono* the defendant should make good the damage done to the plaintiff; or penalty may be recovered in an action of debt.  *Evans v. Miller,* 58 Miss. 120; *Miller v. Wesson,.* 58 Miss. 931.

A cause of action *ex delicto* can hardly be conceived of from which the element of implied contract will be wholly absent. Blackstone, in his definition of actions upon implied contracts, is comprehensive enough to embrace almost every action on the case save slander, libel and assault and battery.  In the present condition of the law the abolishment of the forms of actions has practically done away with the distinction sought by appellees to be made in this case, namely, that the chancery court has. no jurisdiction of torts and that the recovery by appellant could be only upon an implied contract.  It is apparent from the record that the appellant was and is a creditor of the corporation, the Dodson Plow Company, subsequently called the New South Plow Company; that the debt due by it to appellant is a fixed sum growing out of a transaction making the stockholders to an extent liable to appellant for the corporation's debt.  The record being conclusive of these facts, the inquiry which the appellees' plea makes is wholly immaterial; and, as it is no defense to the suit, is insufficient in law and should be stricken from the files.  *Lamb v. Russell,* 81 Miss. 382, 32 South. 916; Code 1892, § 852.

A judgment creditor of an insolvent corporation, on return of execution indorsed *nulla bona,* may sue in equity the different stockholders of the corporation for balance unpaid on stock subscribed for by them severally, and for dividends received by them when the corporation is insolvent.  10 Cyc. 660, 682; Code 1892, § 844; *Vicks v. Lane,* 56 Miss. 681; *Perkins v. Sanders,* 56 Miss. 733; *Robinette v. Starling,* 72 Miss. 652; *Hatch v. Dana,* 101 U. S. 205, 25 L. Ed. 885; *Miller v. Bradish* (Iowa), 28 N. W. 594.

The judgment of the federal court must be held *res judicata*

of the facts set up in the plea, such facts being embraced within the issue of the chancery suit against the corporation and the stockholders of the corporation being privies to that suit. 10 Cyc. 672, 733; 21 Am. & Eng. Ency. Law (1st ed.), 181; Thompson on Liability of Stockholders, § 239; *Powell v. Railroad Co.*, 3 L. R. A. 201; *Heggie v. Building Ass'n* (N. C.), 12 S. E. 277; *Lehmann v. Glenn* (Ala.), 6 South. 44; Freeman on Judgments, § 177.

The capital stock and other property of a corporation constitute a trust fund in the hands of the stockholders for the payment of corporate obligations. 26 Am. & Eng. Ency. of Law (2d ed.), 1007, note 6; *Lewis v. Robertson*, 13 Smed. & M. 558; *Payne v. Bullard*, 23 Miss. 88; Beach on Private Corporations, §§ 116, 117; *Hatch v. Dana*, 101 U. S. 205, 25 L. Ed. 885. And our own court has declared recently that the only defense which may be set up by the stockholder in a suit based upon such principle is that of payment. *Robinette v. Starling*, 72 Miss. 652, 18 South. 42; *Vick v. La Rochelle*, 57 Miss. 602.

In *Carver v. Braintree Mfg. Co.*, 2 Story, 432, Fed. Cas. No. 2,485, the United States supreme court held that the word "debts" is equivalent to "dues," and the word "contracted" equivalent to "incurred." Hence the phrase "debts contracted," used in Code 1892, § 844 (Code 1906, § 909), means "dues owing or liabilities incurred," and should cover unliquidated claims arising from torts. And as the damages in this case arose from the infringement of a patent right, the rule is applicable. *Chase v. Curlis*, 113 U. S. 452; *Flash v. Conn*, 109 U. S. 371, 27 L. Ed. 969; *Cable v. McCue*, 72 Am. Dec. 214; Beach on Private Corporations, § 150; *Powell v. Railroad Co.*, 3 L. R. A. 202; 10 Cyc. 734.

*William Baldwin*, for appellees.

The charter of the corporation, Dodson Plow Company, was granted in 1904, and was amended in 1905; hence the powers and liabilities of the corporation are governed by Code 1892.

Every stockholder subscribing for stock in the corporation did so under the knowledge that his liability was limited by the statute law of Code 1892, § 844, amended Laws 1894, ch. 55. Under such law, if Avery & Son holds a debt "contracted" by the corporation during the ownership of stock by any of the appellees, recourse may be made against such appellees for the amount of any unpaid subscription on the stock; otherwise not.

With hardly a dissenting voice the courts of our land have always held that a stockholder who subscribed for stock is liable on his unpaid subscription for the contractual debts of the corporation, but not for liabilities of the corporation growing out of its torts. The corporation and its corporate assets stand liable for the torts or wrongdoing of its officers because it is the duty of the corporation to see that none of its employees shall violate the rights of other persons, and it becomes responsible for such violation of the rights of others arising from torts, according to the ordinary law of principal and agent. But the stockholder's relation to a party whose rights are infringed upon through the corporation's tort, is entirely different. The stockholder has done no wrong, and in all probability knows nothing of it at the time of its occurrence, is not a party to it, and would no doubt gladly prevent it if he could. After the proper officers of the corporation are elected, the stockholder has fulfilled his duty; and the performance of the duties of the officers is a matter for the corporation's consideration, not the individual stockholder's.

One dealing with a corporation looks to it for two things as a basis of credit to the corporation, namely, the corporation's property and the corporation's capital stock; these two items being all that a corporation can have with which to respond to the demands of creditors. And a party dealing with a corporation has the right to demand that the capital stock of the corporation be paid in or that it will be paid in, if necessary, to satisfy the debts due by the corporation. Any creditor who contracts with a corporation can in law assume that it has the

amount of its capital stock paid in, or that such capital stock will be fully paid in when necessary, to settle the contracts of the corporation with its creditors.  And it follows that this basis of credit becomes one of the rights of the creditors contracting on the faith of such assumption.  But such is not the rule where the claim of a party against a corporation is founded upon tort.  No obligation in his favor exists because of credit extended.  The party injured by the tort has not dealt with the corporation at all.  Beach on Private Corporation, § 151; Clark & Marshall on Private Corporations, 2479*b*; 26 Am. & Eng. Ency. Law (2d ed.), 1024, 1025, note I.

What is the claim sued on here?  It is damage arising from the infringement of a patent; and nothing more.  It is true that the decree was rendered in a court of equity, because the revised statutes of the United States 1875, §§ 4918, 4919, 4921, give jurisdiction to such court to grant decree for damages although arising from tort.  But this does not affect the situation.  The case was in tort, and will be so considered by any and all courts.  *Chase v. Curtiss,* 113 U. S. 452, 28 L. Ed. 1042; *Louisiana v. New Orleans,* 109 U. S. 285.

It is not denied here that a judgment against a corporation is binding upon the stockholders and cannot be questioned or its merits inquired into in a subsequent suit.  But a judgment against the corporation is an entirely different thing from a judgment against the individuals who comprise the stockholders of the corporation.  *New Orleans, etc., R. Co. v. Hurst,* 36 Miss. 667.

Where property has been wrongly converted and sold, the owner may waive the tort and sue for the money value; but the foundation of the action is in tort and not in contract.

Avery & Son never was a "creditor" of appellees.  Nor did the "debt" sued on in the present case exist when the alleged dividends were declared.

As to any claim upon the directors of the corporation, it is only necessary to say that Code 1906, § 924, providing that

directors shall in certain cases become individually liable for excess of indebtedness over the capital stock, and may be sued therefor by any creditor, refers merely to creditors whose debts are based upon contracts. The intent of the statute is merely to protect creditors of a certain kind, that is, only such creditors as have dealt with the corporation in ignorance of the reckless conduct of the directors. The directors are not made liable as individuals for the payment of the liabilities of the corporation adjudged as a result of the corporation's torts. 10 Cyc. 666.

*Newman Cayce,* on the same side.

The appellees are not the New South Plow Company, but are merely individual stockholders and sued as such. The individual liability of the stockholders of a corporation is dependent upon statute law, and does not exist at common law. *Terry v. Little,* 101 U. S. 216, 25 L. Ed. 864; Cook on Corporations, § 217; Beach on Corporations, § 151.

The individual liability of stockholders is fixed by the law of the state granting the charter; and stockholders are liable only according to the plain meaning of the terms employed by the legislature of such state, and not otherwise. This principle is universally recognized and enforced in all courts. The statute law of Mississippi, imposing liability upon individual stockholders, shows clearly that the legal intent is that individual stockholders of a corporation are liable only upon debts of the corporation resting in contract and dependent upon contractual relations. The wording of Code 1906, § 909, is that in all corporations each stockholder shall be individually liable for the debts *contracted.* Code 1906, § 924, states that under certain circumstances the directors of the corporation shall be liable for excess of debts *contracted.* Nothing is said about torts, and the corporation of itself cannot by its action or inaction add to the liability fixed by the statute law.

The federal court's judgment against the corporation based

upon the infringement of the patent was in no way conclusive against the individual stockholders. Their individual liability could not have been determined by the federal court in the suit wherein judgment was rendered. There can be no *res judicata* as regards the rights of the individual stockholders to file their plea in the present suit.

A judgment does not and cannot change the nature of the cause of action upon which it is founded, nor can it impose, in a case like this, a liability upon stockholders of the defendant corporation, a liability which the law did not impose before the rendition of the judgment. If the judgment of appellant in the federal court against the New South Plow Company had been rendered upon a cause of action *ex contractu,* then cause would exist for claiming the judgment to be conclusive, as against the stockholders, because in all matters of contract the officers of the corporation are the agents of the stockholders. But where the judgment against the corporation rests wholly in tort, then an entirely different case is presented. In cases of tort against a corporation the individual stockholders are not parties to the action, and are not represented therein by the corporation, and the judgment against the corporation, if rendered, will in no way make the stockholders individually liable; the proceeding against the corporation being, as to them as individuals, *res inter alios acta.*

Officers of a corporation, in committing torts, are acting without authority of law and without even the implied consent of the individual stockholders; and are hence never to be considered as agents of the individual stockholders. *Carroll v. Green,* 2 Otto (U. S.), 509, 28 L. Ed. 239; Morawitz on Private Corporations, 882; Clarke & Marshall on Private Corporations, 2601; *Leighton v. Campbell* (R. I.), 9 L. R. A. 187; *Miller v. White,* 50 N. Y. 137; *Whitney v. Barlow,* 62 N. Y. 62; *Esmond v. Pullard,* 16 Hun, 65; *Cable v. McCune,* 26 Mo. 371, 72 Am. Dec. 214; *Cable v. Gaty,* 34 Mo. 572; *Bohn v. Brown,* 33 Mich. 257; *Chase v. Curtiss,* 113 U. S. 452, 23 L.

Ed. 1038; *Poley v. Lacert,* 35 Ore. 64, 58 Pac. 37; *Childe v. Boston Iron Works,* 137 Mass. 518.

In construing the statute law applicable to the case at bar, it must be kept in mind that all words and phrases contained in the statute law are used accordingly to their common and ordinary acceptation and meaning.

*Betts & Sturdivant,* on the same side.

The infringement of a patent is a tort; and a recovery for infringement is not for a breach of an implied contract. 16 Ency. Pl. & Pr. 79; *Leighton v. Campbell,* 9 L. R. A. 187. The character of an action must be determined by the nature of the alleged grievance rather than by the form of action. *New Orleans, etc., R. Co. v. Hurst,* 36 Miss. 668.

Statutes creating liability of stockholders for the debts of the corporation must be strictly construed. 26 Am. & Eng. Ency. Law (2d ed.), 1032, sec. 2.

A judgment against a corporation for damages because of an infringement of a patent does not constitute a "debt" for which the individuals who are stockholders will be held liable. 10 Cyc. 684, 685, 734.

FLETCHER, J., delivered the opinion of the court.

In 1904 there was organized and incorporated a corporation known as the Dodson Plow Company, domiciled at Columbus. Some time later the corporate name was changed to the New South Plow Company and the capital stock was increased. The corporation found it necessary to borrow considerable sums of money aggregating some $35,000, from various banks in Columbus and Aberdeen, and to secure these sums executed deeds of trust on all its property for the benefit of the banks and of one Charles R. Smith, who was an accommodation indorser on certain of the company's paper. It seems that the corporation virtually suspended operations after the execution of these trust deeds and may be said to be without assets and hopelessly insol-

vent. In November, 1906, Avery & Son, a Kentucky corporation, exhibited its bill in the circuit court of the United States for the Northern District of Mississippi against the New South Plow Company, averring in substance that the defendant company had infringed a patent owned by Avery & Son, and praying for an injunction against the further use of this patent and for an award of damages. No defense was made to this suit, and in April, 1907, a *pro confesso* was taken and a final decree entered, making the injunction perpetual and awarding Avery & Son damages in the sum of $3,000. An execution was issued on this decree of the federal court and returned *"nulla bona."* Thereupon in September, 1907, Avery & Son filed a bill in the chancery court of Lowndes county against the stockholders and directors of the New South Plow Company, seeking to hold them liable for the $3,000 evidenced by the federal court judgment—the contention being· that the stockholders were liable under section 909 of the Code of 1906 "for the amount or any balance that may remain unpaid for the stock subscribed for by them;" further, that under section 923 of the Code the directors and stockholders were liable for the amount of capital stock withdrawn and dividends declared while the company was insolvent; further, that the directors were liable under section 924 of the Code for debts contracted in excess of the amount of capital stock. Defendants filed their plea, setting up the fact that the demand of Avery & Son was based upon a judgment for infringement of patent and was not such a debt as the statute contemplated. This plea was held good by the court below and the bill dismissed. This appeal, therefore, presents the single question whether damages awarded for the infringement of a patent fall within the meaning of our statutes making directors and stockholders liable under certain circumstances for the debts of the corporation.

There can be no doubt that the infringement of a patent is a tort. 16 Ency. Pl. & Pr. 79. It is argued, however, that, though this be an action *ex delicto,* yet the tort may be waived,

and the wrong treated, as having arisen from the breach of an implied contract; and in support of this contention *Evans v. Miller,* 58 Miss. 120, 38 Am. Rep. 313, and *Miller v. Wesson,* 58 Miss. 831, are cited. Both these cases deal with the recovery of the value of trees cut from the plaintiff's land and by the defendant converted to his use. The precise holding is thus stated in the *Evans case:* "The action of assumpsit can be maintained, though there was no actual conversion of the trees into money. It is held by many courts of high authority that a tort can only be waived, and an action *ex contractu* maintained, where the tortfeasor has converted into money the proceeds of his wrongful act, and has thus subjected himself to an action for money had and received. An intimation of this sort was thrown out in *O'Conley v. City of Natchez,* 1 Smedes & M. 46, 40 Am. Dec. 87, and again in *Mhoon v. Greenfield,* 52 Miss. 440, and certainly it is supported by many adjudicated cases in England and America. A more liberal, and we think a more sensible, rule is laid down by the later text-writers, and sustained by many courts, to the effect that the tort may be waived and assumpsit maintained whenever the property taken has been converted either into money or into any other beneficial use by the wrongdoer, and especially where it has been so applied to his use as to lose its identity. Cooley on Torts, 95, and cases cited; 2 Greenl. on Evidence, § 108, note 5; 1 Hill on Torts, 42; note 'a.'

"It is impossible to perceive any valid objection to this doctrine. So long as the trespasser retains, in its original shape, the property taken, he may logically deny that he holds it under a contract, and demand that he be proceeded against in tort, and that the tort be established against him; but when he has parted with it, either for money or other property, or when he has mingled it in its use, or changed its form, he should not be permitted to deny the assumption to pay its value which the law imputes from his method of dealing with it." This is all that is held in these cases, and certainly no warrant can here be found for abolishing all distinctions between actions *ex delicto* and *ex*

*contractu.* The true basis of the perfectly correct holding in these cases is thus stated by the supreme court of Massachusetts: "It is a well-known rule that, if property has been wrongfully converted and sold, the owner may waive the tort and sue for the money; but the foundation of the action is a tort for which trespass or case would lie, and the action proceeds, not on the ground of a contract, but of an equitable obligation to pay over the proceeds of the sale. *Jones v. Hoar,* 5 Pick. (Mass.) 285; *Bigelow v. Jones,* 10 Pick. (Mass.) 161. *Child v. Boston & Fairhaven Iron Works,* 137 Mass. 516, 50 Am. Rep. 328.

We think there can be no real dissent from the conclusion that an infringement of a patent is a tort, and that there can be no recovery upon the theory that the damages were awarded for any breach of an implied contract. The question before us is, therefore, broadly, whether the term "debts," as used in our statute, can be held to include damages awarded for the commission of torts. It should be remembered that we must look to our statutes, and to our statutes alone, in determining this question of liability; for at common law the stockholders were not liable for any of the obligations of a corporation, whatever their character and in whatever manner incurred. *Terry v. Little,* 101 U. S. 216, 25 L. Ed. 864. It is necessary, therefore, to give careful scrutiny to the exact terms of the statute.

Section 909 provides: "In all corporations each stockholder shall be individually liable for the debts of the corporation contracted during his ownership of stock, for the amount of any balance that may remain unpaid for the stock subscribed for by him, and may be sued by any creditor of the corporation; and such liability shall continue for one year after the sale or transfer of the stock. The stock in all corporations shall be transferable by the indorsement and delivery of the stock certificate and the registry of such transfer in the books of the corporation."

Section 923 provides: "No part of the capital stock in any corporation shall be withdrawn or diverted from its purpose, nor a dividend declared, when the company is insolvent, or would be

rendered insolvent by such withdrawal or the payment of such ·dividend; and the directors who assented to such withdrawal, or declared and paid such dividend, as well as the stockholders who received it, shall be jointly and severally liable to creditors whose debts then existed, to the extend of such withdrawal or dividend and interest."

Section 924 provides: "The amount of debts which any trading corporation or company may contract or owe shall not exceed the amount of its capital stock paid in; and in case the debts exceed that amount, the directors who contracted such debts shall be individually liable for the excess over the amount of capital stock, and may be sued therefor by any creditor, whether the debt be due at the time of suit brought or not, if such creditor was without notice or knowledge of the excess at the time his debt was made."

It will thus be seen that the statute speaks of "debts contracted" and "debts existing," and for the payment of these obligations the directors and stockholders are liable. These being the terms employed, we are not left without guidance in the authorities. The rule is thus stated by Beach: "The 'debts' of a corporation, for which its members are made liable by statute, are such claims against it as arise from contract, and do not include a judgment against the company for tort, even through the tortious act might have been considered a breach of contract, nor costs in such action." Beach on Private Corporations, § 151. To the same effect is another approved authority: "The statutory liability imposed upon the stockholders in corporations is a liability exclusively for debts and demands accruing against the corporation by reason of its contracts. It cannot, therefore, be enforced to pay damages recovered against the corporation in an action in tort." 1 Cook on Corporations, § 217.

One of the earliest and most emphatic cases on the subject is *Heacock v. Sherman,* 14 Wend. (N. Y.) 58, construing and applying a statute much more comprehensive than our own. It is there said: "The eighth section of the act incorporating the

Buffalo Hydraulic Association (St. 1827, p. 45) enacts: 'That the stockholders of the said corporation shall be holden jointly and severally to the nominal amount of their stock, for the payment of all debts contracted by the said corporation, or by their agents; and any person or persons having any demand against the said corporation may sue any stockholder or stockholders, in any court having cognizance thereof, and recover the same with costs; provided that no stockholder shall be obliged to pay more in the whole than the amount of the stock he may hold in the said company at the time the debt accrued.' The term 'demand' is undoubtedly broad enough, if it stood alone, to embrace the claim of the plaintiff. It is a word of the most extensive signification that can be used in a release, and operates to discharge the release from every cause of action existing at the time in favor of the party executing it. We must, however, look at the whole section, and the connection in which it stands, in order to fix its meaning in this case. The stockholders, in the first place, are made jointly and severally holden for the payment of all debts contracted by the corporation or by their agents. The liability is here declared. It is new, and unknown to the common law, and is in terms limited to demands *ex contractu*. The residue of the section was not intended to extend the liability thus declared, but is in furtherance of the remedy. Without it, it might be a question whether, under the first clause, a party would be bound to sue all the stockholders, or but one of them, agreeably to the rule of law respecting joint and several obligors. 1 Chitty's Pl. 30; 5 Bacon, tit. 'Obligation,' D, 4. But the proviso to the section is conclusive upon the point. Any person having a demand against the corporation is authorized to sue any stockholder, in any court, etc., 'provided that no stockholder shall be obliged to pay more, in the whole, than the amount of the stock he may hold in said company at the time the debt accrued'—thereby clearly qualifying the enlarged meaning of the word 'demand,' and showing, satisfactorily, that it was used by the legislature to denote a demand arising upon contract. Damage arising upon tort is not a debt

·accrued, within any reasonable construction of that term. It is apparent, as well from a view of the whole section as from an analysis of its parts, that the intent of the framers of it was ·only to make the stockholders individually responsible for the debts of the company."

This was quoted with approval, and indeed, made the basis ·of decision, by the supreme court of the United States in *Chase v. Curtiss,* 113 U. S. 452, 5 Sup. Ct. 554, 28 L. Ed. 1038. In that case Justice Matthews, in referring to a contention which is here made that the demand, when reduced to judgment, be-·comes a debt within the meaning of the statutes on the subject, says:

"But, if this proves anything, it proves too much, and, instead ·of showing the thing to be proved, that the judgment is con-clusive evidence of a debt, it establishes, on the contrary, that a liability on the part of the corporation for a tort, though after-wards reduced to judgment against it, is not a debt of the cor-poration, even when in judgment, within the meaning of the ·statute imposing upon the trustees the penalty sought to be en-forced in this action for not making and publishing an annual report showing, among other things, the amount of its existing debts. For, keeping in view the statement now urged by counsel of the impossibility, in advance of liquidation by the verdict of a jury, of even approximately, much less accurately, stating the amount of such a liability, can it be supposed that the duty to do so is developed upon the trustees within either the letter or spirit of this statute, under penalty of becoming personally lia-ble to pay whatever judgment may be thereafter rendered on ac-·count thereof against the corporation? Surely not. Such ·claims are not within the contemplation of the act. The mis-·chief to be prevented by its requirements has no relation to lia-bilities of that description. The creditors to be protected are those only who become such by voluntary transactions, in refer-·ence to which, for their benefit, the information becomes impor-·tant as to the debts of the company."

The issues and contentions here involved were made the sub-

ject of a careful review by the supreme court of Missouri in *Cable v. McCune,* 26 Mo. 371, 72 Am. Dec. 214. It is there said:

"The question, however, here is, What class of demands is embraced within the words 'debts contracted?' Our legislature did not go the length which others have in fixing the liabilities of the stockholders of these manufacturing corporations. They did not enact, as in many other states it is enacted, that the stockholders should be responsible for every liability established against the corporation and which its assets turned out insufficient to meet. Such statutes as these, creating a general and determined liability, not dependent on circumstances, becoming as it were a part of the very essence of the charter, may reasonably admit of a very different construction from the law which seems to recognize the general principle of individual irresponsibility, subject to a very limited exception, and only ventures to hold out such responsibility as a penalty for a failure on the part of its managers to perform certain acts directed in the law, and supposed to furnish some advantages to the public. The statute, which Judge STORY construed in *Carver v. Braintree Mfg. Company,* 2 Story, 432, Fed. Cas. No. 2,485, was of this remedial character. That act declared that every member of the manufacturing company named should be liable in his individual capacity for all debts contracted whilst he was a member. There was no penalty for an omission or a commission. It was simply a recognition of the individual liability principle on the face of the charter. Called upon to construe such a charter, Judge STORY held it to be remedial, not penal, and, so viewing it, he gave the word 'debt,' which was the term used, a very liberal and extensive signification, to forward the manifest purposes of the law and the interest of society.

"Had our legislature taken the same step and boldly inserted such a provision in all their charters of this class of corporations, Judge STORY's views, forcible and reasonable as they are, ought to have great weight in determining the construction of

such a statute.   Judge STORY concedes that the interpretation
he gives to the word 'debt' is a very loose one, and, in short, is
making it synonymous with 'demand.'   He substituted for the
words 'debts contracted' the phrase 'dues owing' or 'liabilities
incurred,' regarding them as essentially equivalent expressions.
The result was that a demand founded on tort was equally within
the meaning of the act with a debt, liquidated or unliquidated.
We do not feel ourselves authorized, upon well-settled and long-
established principles, to take this liberal view of the word
'debts' when used in our statute.   Although the language is the
same in the two statutes, ours is manifestly highly penal in its
nature, whilst the Massachusetts act was considered by Judge
STORY as a remedial one.   The demand sought to be enforced
in the present action is certainly not a debt in the legal accep-
tance of the term, and it is, to say the least, doubtful whether it
could be so regarded in its popular acceptation.   The defendants
are entitled to the benefit of such doubts.   The popular meaning
of a term may very properly be resorted to in ascertaining its
construction in a purely remedial statute, and the plain objects
of such laws ought not to be defeated by a narrow and technical
definition.   Unfortunately there are some words—and this word
'debt' is perhaps one of them—the popular meaning of which
is unsettled and fluctuating, and hard to be ascertained.   Where
there is room for doubt, and the statute is penal, the safer rule
is to adhere to that limited and definite sense to which long-
established legal usage has restricted it.

"The liability of the St. Louis Marine Railway & Dock Com-
pany to the plaintiffs was not a 'debt' within the legal accep-
tation of that term, as declared by Blackstone and other writers
of established authority.   It was not 'a sum of money due by
certain and express agreement.'   Whether the suit against the
company which resulted in the judgment sought to be enforced
against the defendant was one which would properly fall within
the class of actions considered as founded on contract, or in that
class which is based upon tort, is a more difficult question to de-

termine, if it was important that it should be determined at all. In the division of actions made by Blackstone, it would probably be considered as founded on contract; for his definition of actions upon implied contracts is comprehensive enough to embrace almost every action on the case, exept slander, libel, assault and battery, and similar actions. In his sixth subdivision of actions upon implied contracts, Blackstone includes a variety of actions for what he terms breaches of implied duty or trust, which would comprehend almost every case of damage imaginable. This court, upon previous occasions, have treated actions like the present as substantially founded on tort, although a breach of contract is stated as inducement to the action. *Ack's v. Ball,* 14 Mo. 396; *McDonald v. Forsyth,* 13 Mo. 549. So, in New York, Judge NELSON, in the case of *Heacock v. Sherman,* 14 Wend. 58, considered the action as one for damages upon a tort, and not arising upon contract, although, upon Blackstone's division of actions, that case, which was for the loss of a horse by reason of the failure of a corporation to keep a bridge in repair, might very well have been considered as an action for damages arising out of contract. There was an implied contract that the company should keep the bridge in repair, and by reason of their failure to comply with their obligations the damage resulted, and in this way the case might be said remotely to be founded on contract. But the real gist of the action, in that case as in this, was a tort, namely, the negligence and misfeasance of the corporation's agents, and the insufficiency of the bridge in the one case and of the dock in the other, by which the damage complained of was sustained. Such damages can hardly, in popular acceptation, be regarded as debts. Certainly it is by no means clear that the legislature meant to embrace such demands.

"We regret that in the examination of this subject we have been without any precedent to guide us. The only case directly in point is the one cited from Massachusetts (*Milldam Foundry v. Hovey,* 21 Pick. 417), and that is undoubtedly against

the conclusion to which we have arrived. An opinion of a court of such acknowledged ability as the supreme court of Massachusetts is entitled to great respect, but the circumstances under which that opinion was delivered detract somewhat from its importance as authority. The question arose incidentally upon the exclusion of a witness, and it would seem, from the curt manner in which the court disposed of it, that not much importance was attached to its decision. No investigation was made into the matter upon principle or authority, and it is easily inferred, from a perusal of the case, which turned principally upon other points, that the question here considered was entirely a subordinate one, and its decision either way probably had no material influence upon the result. The statute under which the question arose seems to have differed from ours in the use of the word 'contracts,' as well as 'debts,' although the court did not, so far as I can perceive, attach any particular importance to this word. Under these circumstances, the case, as a mere precedent, does not appear entitled to great weight, notwithstanding the respectability of the court which decided it. On the other hand, the case of *Heacock v. Sherman,* 14 Wend. (N. Y.) 58, is an authority, not only directly in variance with the decision of the supreme court of Massachusetts, but also entirely irreconcilable with Judge STORY's views in *Carver v. Braintree Mfg. Company,* 2 Story, 432, Fed. Cas. No. 2,485. Judge NELSON, who delivered the opinion of the court in that case refused to give a construction to the words 'debts contracted' that would embrace a demand for damages in an action founded on a tort. The other authorities referred to in the argument of this case are upon statutes essentially different from the one now under consideration."

We have thus set out these views at some length, for the obvious reason that they contain what we conceive to be the true theory upon all the propositions involved in this case. The opinion distinguishes, and distinctly limits, if it does not wholly disregard, the case of *Carver v. Braintree Mfg. Company,* 2

Story, 432, Fed. Cas. No. 2,485, a case which may be said to be
the foundation of the theory that individual stockholders under
statutes similar to ours can ever be held personally liable for
the torts of the corporation.    This opinion of Judge STORY,
however, gives us less concern, since its doctrine has been ex-
pressly repudiated by the Massachusetts court itself, as will be
seen from the opinion in *Child v. Boston & Fairbanks Iron
Works,* 137 Mass. 516, 50 Am. Rep. 328, in which it is said
that Judge STORY's decision stands unsupported by any direct
authority, either before or since.    This last-cited case is of
especial value, since it was a case of damages arising from the
infringement of a patent, which demand was held to arise *ex
delicto,* and therefore not to be considered as a "debt contracted
by the corporation."    It is true that in volume 23 of the first edi-
tion of the American and English Encyclopedia of Law, at page
870, occurs a statement that there is a conflict of authority as to
whether the term "debts" includes claims for damages arising
from torts, and also true that a table of cases is appended which
are said to support the affirmative of this proposition.    But an
examination of these cases will show that a majority of them are
positive and emphatic authorities for the opposing view.    In this
list are included *Chase v. Curtis, Cable v. McCune, Child v.
Washburn Iron Works,* and *Heacock v. Sherman,* all of which
have been noted above as supporting the conclusions reached in
this opinion.    A careful examination of the entire list shows
that practically all these decisions fail to support the statement
in the note.    The second edition of this work states correctly
that unliquidated damages arising from the commission of a tort
by the corporation or its agents are usually held not to be
"debts," within the meaning of that term as used in the statutes
imposing liability upon stockholders.    26 Am. & Eng. Ency. of
Law (2d ed.), 1024, 1025.

These authorities not only settle the proposition as to the non-
liability of the stockholders for damages arising from tort, but
many of these cases further consider the contention that the

status of the claim is affected by the fact that the claim has been reduced to judgment.   All of these authorities agree that the reduction of these claims to judgment does not change the nature of the demand, nor serve to extend the scope and significance of the term "debts," as this word is employed in the statutes.   On principle we are in hearty accord with the reasoning and conclusions of these decisions.   It seems to us an impossible view that the legislature ever intended to hold stockholders liable for any demands other than those growing out of the contractual relations between the corporation and its creditors.   These statutes proceed upon the theory that any one extending credit to the corporation has a right to presume conclusively that the stock subscribed has been fully paid in, that the capital stock of an insolvent concern shall not be distributed in dividends, and that the corporation shall not contract debts in excess of its capital stock.   As to these matters the directors and stockholders are held liable; but it surely never was intended that the consequences of tortious conduct on the part of the corporation or its agent should be visited upon the stockholders.   Such demands are necessarily unliquidated, and no corporation would be warranted in declaring dividends, since it would be impossible to say with certainty that a judgment for tort might not arise which would render the corporation insolvent.   The word "debts" should be construed according to its common and usually understood significance, and so construing it, we think the learned court below correctly denied its application to a judgment for tort.

*Affirmed.*