## POWELL v. OREGONIAN RY. CO.

*(Circuit Court, D. Oregon. December 3, 1888.)*

CORPORATIONS—STOCKHOLDERS—LIABILITIES—LANDLORD AND TENANT—WASTE.
　　A corporation, being the lessee of property, permitted waste thereon, for which the lessor, in an action for damages, recovered a judgment for $5,300, and, the corporation being insolvent, brought suit against a stockholder thereof, on whose stock more than that amount was then unpaid, to enforce the payment of the judgment. *Held* that, whether the original claim of the plaintiff for damages was or was not an "indebtedness" of the corporation within the scope of section 3, art. 11, of the constitution of the state, which declares that a stockholder of a corporation "shall be liable for the indebtedness" of the same to the amount unpaid on his stock, the judgment obtained thereon is such an "indebtedness;" and any stockholder of the corporation is liable therefor to the plaintiff therein to the amount unpaid on his stock.
(*Syllabus by the Court.*)

In Equity. On demurrer to bill.
Suit to enforce the debt of a corporation against a stockholder.
*A. L. Frazer*, for plaintiff.
*Earl C. Bronaugh*, for defendant.

DEADY, J. This suit is brought by the plaintiff, a citizen of Oregon, against the defendant, a British corporation having its principal office in

Dundee, Scotland, to enforce the payment of a judgment heretofore obtained by him against the Dayton, Sheridan & Grand Round Railway Company, to-wit, on April 8, 1887, for the sum of $5,300.

It is alleged in the bill that the Dayton, Sheridan & Grand Round Railway Company is a corporation formed under the laws of Oregon, with a capital stock of 2,000 shares, of the par value of $100 each; that Joseph Gaston, under the name of J. Gaston & Co., subscribed 1,000 shares of such stock, while all the other subscriptions to the same only amounted to 50½ shares, which were paid in full; that in 1880 Gaston sold and transferred his stock, without having paid anything thereon, to Ellis G. Hughes, who on February 27, 1884, sold and transferred the same to the defendant, who now is, and ever since has been, the owner of the same; that no part of Gaston's subscription was ever paid by any one, except the sum of $61,000, paid by the defendant, in pursuance of a decree given against it by the supreme court of the state, on January 14, 1884, in the suit of *Branson* v. *Railway Co.*, [2 Pac. Rep. 86,] and that there is still due and unpaid on the same the sum of $39,000.

That on January 29, 1887, the plaintiff commenced an action in the circuit court of the state for the county of Yamhill, against the Dayton, Sheridan & Grand Round Railway Company, to recover damages for an injury to plaintiff's property, while leased to said company, and obtained a judgment therein for the sum of $5,300, and at the same time served a notice on the defendant herein, as the successor in interest of the Dayton, Sheridan & Grand Round Railway Company, to defend the said action, and that the plaintiff would look to the defendant for the payment of any judgment he might recover therein; that the defendant, by its attorneys, did make a defense to said action, and on September 12, 1887, caused an appeal to be taken from the judgment therein to the supreme court, where the same was affirmed, with costs, amounting to $77.20, [16 Pac. Rep. 863;] that since July 1, 1883, the Dayton, Sheridan & Grand Round Railway Company has been and now is wholly insolvent, and has no property within the state subject to execution; and that the defendant, being the owner, as aforesaid, of the stock of said company, on which the sum of $39,000 is due and unpaid, is liable to the plaintiff, as a creditor of the company, for the amount of said judgment against the same.

The prayer of the bill is that the defendant be compelled to pay into court on the unpaid stock of the Dayton, Sheridan & Grand Round Railway Company a sum sufficient to satisfy its indebtedness to the plaintiff, or that the latter have a decree against the defendant for the amount of the judgment against the company, with interest.

The defendant demurs to the bill, for that the plaintiff, on the case stated in the bill, is not entitled to any relief against it.

On the argument the only point made in support of the demurrer was that the claim of the plaintiff, having arisen out of a tort, is not such an "indebtedness" as a stockholder is liable for.

The constitution of Oregon (article 11, § 2) provides that "corporations may be formed under general laws;" and (Id. § 3) enacts:

"The stockholders of all corporations and joint-stock companies shall be liable for the indebtedness of said corporation to the amount of their stock subscribed and unpaid, and no more."

Section 14 of the corporation act (Comp. 1887, § 3230) provides:

"All sales of stock, whether voluntary or otherwise, transfer to the purchaser all rights of the original holder or person from whom the same is purchased, and subject such purchaser to the payment of any unpaid balance due or to become due on such stock; but, if the sale be voluntary, the seller is still liable to existing creditors for the amount of such balance, unless the same be duly paid by such purchaser."

At common law, the members or stockholders of a corporation are not individually liable for the debts of the same, (Thomp. Liab. Stockh. §§ 1, 4;) but the capital stock of a corporation is considered a trust fund for the payment of its debts (Id. § 10;) and an unpaid subscription to the stock of a corporation is a part of such capital stock (Id. § 11.)

From this it appears that the rule prescribed in the constitution of the state, concerning the liability of stockholders, is neither more nor less than that of the common law. Under either the stockholder is liable for the indebtedness of the corporation to the extent of his unpaid subscription or stock, "and no more."

Several cases have been cited on the argument of counsel for the respective parties, but none of them are altogether in point.

In *Foundery* v. *Hovey*, 21 Pick. 417, the statute made the stockholder liable for the existing debts of the corporation, if the latter failed to publish annually the amount paid in of its capital stock and existing debts; and the question in the case was whether a claim for unliquidated damages, arising out of a breach of a contract to manufacture certain articles, was a "debt" within the statute. And although the statute was in effect a penal one, the court held that "all such claims for damages were intended to be included in the term 'debts.'" Id. 454, 455.

In *Carver* v. *Manufacturing Co.*, 2 Story, 432, a statute that made a member of any manufacturing corporation individually liable for all "debts contracted" during his membership was held to be remedial in its character, and the phrase "debt contracted," as used therein, to include a claim for unliquidated damages growing out of a tort,—the infringement of a patent.

But in both these cases the question only arose incidentally on the exclusion on account of interest of a witness, and in the former one it appears to have been decided without any consideration.

In *Haynes* v. *Brown*, 36 N. H. 545, under a statute which made the stockholders in a corporation liable for "all debts and contracts" thereof while it omitted to file for record a certificate of the amount of its capital stock, "it was held that the right to recover against the stockholder was not limited to liquidated claims, but included an open account for work and labor.

In *Insurance Co.* v. *Meeker*, 37 N. J. Law, 282, it was held that under a statute giving an action in favor of a "creditor" against the heirs and

devisees of a "debtor," the former might maintain an action against the heir for unliquidated damages arising out of a breach of covenant.

A statute of Missouri provides that every corporation shall give notice annually in a newspaper "of all the existing debts of the corporation," and a failure to do so makes each stockholder liable for all the debts of the company then existing, and for all that shall be contracted before such notice shall be given.

In *Cable* v. *McCune*, 26 Mo. 371, it was held, in a suit brought under the statute, against a stockholder, to enforce the payment of a judgment obtained against the corporation for damages caused by its negligence in docking a steam-boat, that the stockholder was not liable. The ground of the decision is that the statute is penal, and therefore the word "debt" ought to be taken in "that limited and definite sense to which long-established usage has restricted it;" and that the use of the word "contracted," with reference to the "debt" which a stockholder may become liable to pay, indicates clearly that it was the intention of the legislature to limit such liability to debts arising out of contract and not a wrong.

A statute of New York made each stockholder of the Buffalo Hydraulic Association holden to the amount of his stock, "for the payment of debts contracted by the corporation;" and any person having any demand against said corporation "might sue any stockholder, and recover the same, provided no stockholder should be obliged to pay more in the whole than the amount of his stock at the time the debt accrued."

In *Heacock* v. *Sherman*, 14 Wend. 58, it was held, in an action against a stockholder of this corporation, that the term "debt," as used in this act, was limited to claims arising out of contract, and did not include one for damages, arising out of the wrong of the corporation. It was admitted that the word "demand," standing by itself, was comprehensive enough to include the claim. But it was said that the liability of the stockholder was first fixed and limited to the "debts" of the corporation, and the word "demand" was not used for the purpose of enlarging this liability, but in a clause only intended to further the remedy; and that the subsequent phrase, "the debt accrued," used in limiting the amount of the stockholder's liability, clearly qualifies the enlarged sense of the word "demand," and shows that it was used by the legislature "to denote a demand arising on contract."

A statute of Michigan provides that every stockholder of a corporation shall be individually liable for all labor performed for the corporation, and for all debts of the same, to an amount equal to his stock when "such debt was contracted and suit commenced thereon."

In *Bohn* v. *Brown*, 27 Mich. 503, it was held, in a suit brought under this act against a stockholder in a railway corporation to enforce the payment of a judgment obtained against said corporation for damages caused by its negligence in carrying a passenger, that the stockholder was not liable, for the reason that such damages are not a "debt" within the meaning of the statute, and that the putting the claim for them into a judgment against the corporation did not change their character in this respect.

The statute (Comp. 1887, § 3230) does not undertake to declare or define what debts or claims a stockholder in an Oregon corporation shall be liable for; nor does it appear that the legislature, under the constitution, has the power to do so.

It is admitted by the demurrer that the defendant has been a stockholder in the corporation against whom the judgment in question was given since February 27, 1884. Its liability as such stockholder must then depend on the proper construction of the term "indebtedness," as used in the section of the constitution above quoted.

The provision in the constitution on the liability of stockholders is neither remedial nor penal. It gives no new right to the creditor, nor does it impose any extraordinary liability or penalty on the stockholder. It is therefore not to be construed liberally or loosely with a view of making the remedy adequate to the redress of some pre-existing hardship or wrong, nor strictly because of its penal character.

According to Worcester, "indebtedness" means "the state of being indebted." The indebtedness of a corporation is, then, the sum of its debts. And so it will be convenient to consider the constitutional provision as if it read, "shall be liable for the debts of said corporation."

"The legal acceptation of debt is a sum of money due by certain and express agreement; as by a bond for a determinate sum; a bill or note; a special bargain; or a rent reserved on a lease; where the quantity is fixed and specified, and does not depend on any subsequent valuation to settle it." 3 Bl. Comm. 154. And where the agreement to pay is implied by law, the sum to be paid is also a debt. Blackstone (bk. 3, p. 158) says: "Every person is bound and hath virtually agreed to pay such particular sums of money as are charged on him by the sentence, or assessed by the interpretation of the law. * * * Whatever, therefore, the laws order any one to pay, that becomes instantly a debt, which he hath beforehand contracted to discharge." This includes a judgment for a particular sum of money.

In *Gray* v. *Bennett*, 3 Metc. 526, it is said that "the word 'debt' is of large import, including not only debts of record, or judgments and debts by specialty, but also obligations arising under simple contract, to a very wide extent; and in its popular sense includes all that is due to a man under any form of obligation or promise."

In *Crouch* v. *Gridley*, 6 Hill, 250, it was held that a discharge in bankruptcy from all the "debts" owed by the bankrupt at the filing of his petition, did not discharge him from a claim for damages for a tort which was in suit at the filing of the petition, but had not then ripened into judgment.

In *Kellogg* v. *Schuyler*, 2 Denio, 73, it was held that a claim for damages for a trespass was not a "debt" within the bankrupt act, and therefore was not affected by the bankrupt's discharge, although the claim was in suit at the time, and a verdict had been found for the plaintiff. In disposing of the case, the court, in speaking of the claim, said: "Until judgment is rendered there is no debt which is reached by the discharge."

In *Zimmer* v. *Schleehauf*, 115 Mass. 52, it was held that a claim for

damages for slander and malicious prosecution was not a "debt" or "liability contracted" by the bankrupt, and was therefore not affected by a discharge of the bankrupt under the act of 1867. The claim for damages was in suit when the proceeding in bankruptcy was commenced, and there had been a verdict for the plaintiff on which a judgment was given thereafter, but before the discharge. In delivering the opinion of the court Chief Justice GRAY said: "A claim for damages in an action of tort does not become a debt by verdict before judgment." See, also, as to what is a debt, Burrill's Law Dict.; Rap. & L. Law Dict.; Whart. Leg. Max.

The nature of the plaintiff's property and the damage to it, for which the judgment was obtained, is not stated in the bill; but it was understood on the argument that the property was a warehouse at Dayton, on the Yamhill river, which the lessee negligently permitted to be washed away during a season of high water. In other words, the claim was unliquidated damages, alleged to have been caused by a permissive waste.

Such a claim is not a "debt" in any ordinary sense of the word. Nor do I see any good reason why the term "indebtedness," as used in the constitution, with reference to corporations, should be construed to include such a claim. But it is not necessary now to decide that question, and it may be left to the determination of the supreme court of the state, whose office it is to expound the constitution thereof.

When this claim for unliquidated damages became, by the action of the parties under the direction and the limitation of the law, a judgment against the corporation for a definite sum of money, it became, in my opinion, an "indebtedness" of such corporation; and any person then or since, being a stockholder thereof, at once became liable to the plaintiff for such debt to the amount unpaid on his stock.

A claim for unliquidated damages may become a "debt" against a corporation otherwise than by judgment. For instance, the corporation may have compromised with the plaintiff, and given him its note for a portion of this claim in satisfaction thereof, or, being satisfied of the justice of the claim, or the impolicy of contesting it, may have given its note for a full amount thereof. In this way the claim would become a "debt" of the corporation, within the strictest definition of the term, and the liability of the stockholder would commence.

The effect of allowing the plaintiff to take a judgment on this claim, or of his obtaining one notwithstanding a defense thereto by the corporation, is the same, in this respect, as a voluntary liquidation thereof. What was once a mere claim for an undetermined amount, becomes in either case a "debt,"—a legal obligation to pay a definite sum of money.

Assuming that there is neither fraud nor collusion in the premises, whatever indebtedness a corporation may lawfully contract or incur, the stockholder, to the amount of his stock, is bound to pay. Such is the obligation which the law, under these circumstances, raises in favor of the creditor of the corporation and against a stockholder thereof.

On the facts stated in the bill the plaintiff is entitled to the relief sought. The demurrer is overruled.

In arriving at this conclusion no consideration has been given to the allegations in the bill, concerning the notice to the defendant of the action against the Dayton, Sheridan & Grand Round Railway Company, and the defense made to the same by its attorneys.