ADA ROGERS, Appellant, v. STAG MINING COMPANY and C. C. YODER and ALEXANDER LARKIN, Respondents.

Springfield Court of Appeals, December 12, 1915.

1. **CORPORATIONS: Stockholder's Liability for Unpaid Obligations: Law of State Part of Contract.** Stockholder's liability for the corporation's unpaid obligations is contractual and grows out of the stockholder's voluntary subscription of stock. Yet the laws of the State authorizing the forming of the corporation and its existence enter into and become a part of that contract and the liability imposed must be determined by such laws.

2. ———: ———: **Unpaid Stock Subscriptions: Torts: Statutory Provisions.** Provisions of sections 3004, 3006, R. S. 1909, and Constitution, Art. 12, Sec. 9, using the word "dues" and omitting the words "contracted" and "accrued" examined and construed and it is considered that under said provisions the stockholders of a corporation are liable to the extent of their unpaid stock subscriptions on judgments for torts against the corporation.

3. **WORDS AND PHRASES: Statutory Construction: Use of Words Having Adjudged Meaning.** When words such as "dues from private corporations" are adjudged by the courts to have a certain meaning and are afterwards used in constitutional and statutory provisions relating to the same subject it will be taken that such words are used with such meaning.

4. ———: **Fictitious Capital Stock: Valuation Stated.** It is not permissible under Laws of Mo. 1911, p. 148, to form a corporation with fictitious capital stock and merely state in the articles of incorporation that the capital stock consists of property of the named valuation.

5. ————: **Capital Stock: A Trust Fund.** The capital stock of a corporation is a trust fund which must be honestly paid in and administered by those in control.

6. ————: **Capital Stock: Payment in Property: Value May be Disproved: Stockholder's Liability.** Action by judgment creditor to enforce the liability of stockholders of a corporation. Such creditor is not bound by the statements of the articles of agreement as to the value of the stock as made under the provisions of Sec. 3339, R. S. 1909, as amended by Acts 1911, p. 148. But he may show that the property received in payment of stock was not of the value stated. (Constitution, Art. 12, Sec. 8 and Sec. 2981, R. S. 1909.)

7. **CORPORATIONS: Capital Stock: Statements as to: Reliance on.** Persons dealing with a corporation have a right to assume, in the absence of actual knowledge to the contrary, that the stock is fully paid for in money or money's worth.

8. **ESTOPPEL: Basis of: Arises When.** Estoppel is based on actual knowledge of a fact or such lack of knowledge as comes from closed eyes and is equivalent to actual knowledge or constructive knowledge made so by law.

9. **CORPORATIONS: Capital Stock: Valuation in Articles: Filed and Recorded: Judgment Creditor May Disprove.** Action by judgment creditor to enforce liability against stockholders of a corporation. Such creditor is not estopped to show that property taken for stock was not really of the value given in the articles of incorporation, although same had been filed and recorded as required by sections 2975, 3340, R. S. 1909.

Appeal from Jasper County Circuit Court, Division Number One.—*Hon. Joseph D. Perkins,* Judge.

REVERSED AND REMANDED (*with directions.*)

*Frank Lee, Ray Bond* and *R. H. Davis* for appellant.

(1) The judgment of plaintiff is a "due" and a "debt" within the meaning of the Constitution and Statutes of this State making subscribers to the capital stock of corporations liable to its creditors, upon insolvency of the corporation, for the difference between the reasonable value of the property received and accepted by the corporation in payment of its cap-

ital stock and the par value of said stock. Rider v. Fritchie, 15 L. R. A. 513; Flenniken v. Marshall, 28 L. R. A. 402; Powell v. Oregonian R. Co., 2 L. R. A. 270; In re Putman, 193 Fed. 464; 4 Thompson on Corp. (2 Ed), sec. 4845; 1 Cook on Corp. (5 Ed.), sec. 210, page 420; 10 Cyc. 684; Henry v. Myers, 17 L. R. A. (N. S.) 779. (2) Plaintiff is not precluded from recovery in this action, even though it be held that the record of the articles of association of defendant corporation charged plaintiff with notice of the fact that the capital stock of defendant was paid in the property described in said articles. Section 8 of Article 12 of the Constitution; Van Cleve v. Berkley, 143 Mo. 109; Kelley v. Fourth of July Mining Co., 42 L. R. A. 621. (3) If the amendment of section 3339, Revised Statutes 1909, in 1911, and the Act of March 30, 1911, Acts 1911, page 151, relieve defendants from liability to the creditors of defendant corporation for the difference between the par value of the stock issued to them and the reasonable value of the property delivered to and accepted by defendant corporation in payment of said stock, then said amendment and the Act of 1911 are in conflict with section 8, article 12 of the Constitution, and are void. Powell v. Oregonia R. Co., 2 L. R. A. 272.

*Walden & Andrews, H. W. Currey* and *Geo. V. Farris* for respondents.

(1) The liability of a stockholder upon the suit of a creditor of the corporation is secondary, not primary. Pfaff v. Gruen, 92 Mo. App. 560, 565; Swing v. Furniture Co., 123 Mo. App. 367, 380; Guilbert v. Kessinger, 173 Mo. App. 680, 692; Elevator Co. v. Whitbeck, 63 Kans. 102, 64 Pac. 984; Shrainka v. Allen, 76 Mo. 384; Little v. Kohn, 185 Fed. 295; Brant on Suretyship, sec. 49, page 118, citing Grand Rapids Sav. Bank v. Warren, 32 Mich. 557; Hanson v. Don-

kersly, 37 Mich. 184; Harpold v. Stobart, 46 Ohio St.
15 Am. St. 618, 21 N. E. 637; Neal v. Head, 133 Cal.
110, 65 Pac. 131; Smith v. Sheldon, 35 Mich. 42, 47.
(2) Cases holding that a tort judgment cannot be the
basis of recovery against the stockholder, on unpaid
stock subscription. Bohn v. Brown, 33 Mich. 257; Hea-
cock v. Sherman, 14 Wendell, 59; Tilley v. Coykendall,
71 N. Y. S. 457; Ward v. Joslyn, 105 Fed. 224; Doyle
v. Kimball, 52 N. Y. S. 195; Schraeder v. Bank, 133 U.
S. 67; Ward v. Joslyn, 186 U. S. 142; Chase v. Curtiss,
113 U. S. 452; Brown v. Trail, 89 Fed. 642; Kelley v.
Fourth July Mining Co., 53 Pac. 959; Childs v. Iron
Works, 50 Am. St. 328; Savage v. Shaw, 81 N. E. 303;
Avery & Son v. McClure, 47 So. 901, 22 L. R. A. (N.
S.), 256; Old Colony Boot & Shoe Co. v. Adams Co.,
67 N. E. 870, 871; Esmond v. Bullard, 16 Hun. 65, 68;
Doolittle v. Marsh, 9 N. W. 54; Cable v. McCune, 26
Mo. 371, 383; Cable v. Gaty, 34 Mo. 573, 574; Leighton
v. Campbell, 20 Atl. 14, 15. (3) It devolves upon the
creditor, who sues for unpaid stock subscription, where
property was put in as the capital stock of the corpora-
tion, to prove affirmatively that he did not know that
the capital stock was not, in fact, paid, as specified in
the articles of association. How could the rule be at all
applied to a case where the suit was based on a judg-
ment. Davies v. Ball, 116 Pac. 823; Douglass v. Lof-
tus, 119 Pac. 74; Rider v. Fritchey, 49 Ohio St. 295;
Flenniken v. Marshall, 20 S. E. 788; Whitman v. Bank,
176 U. S. 559, 562; Ward v. Joslyn, 186 U. S. 142, 150.

STURGIS, J.—This is a suit to enforce against
defendants Yoder and Larkin, as original stockhold-
ers in the defendant Stag Mining Company, a corpor-
ation, the collection of an unsatisfied judgment against
that corporation. A demurrer to the petition was sus-
tained.

The material facts admitted by the demurrer are
these: That the defendant Stag Mining Company is

a Missouri corporation having a capital stock of
$48000; that plaintiff obtained a judgment against it
for negligence resulting in the death of her husband;
that an execution was issued thereon and returned not
satisfied, the defendant corporation being insolvent;
that defendants Yoder and Larkin are two of the
three original incorporators of said company and have
been and are large stockholders therein; that the en-
tire capital stock of said corporation, as stated and set
forth in the articles of incorporation, was paid up in
property, to-wit, a mining plant and lease, therein de-
scribed and valued at the entire capital stock, but, in
fact, not worth over $1000, as defendant stockholders
well knew.

Two questions are thereby presented for our con-
sideration: First whether a judgment creditor can
avail himself of the remedy provided against stock-
holders for failure to pay their stock subscriptions
when the judgment arises from tort; second, whether
under our present statute, Acts of 1911, p. 149, the cap-
ital stock being paid in property at a fixed valuation
and so stated in the articles of incorporation, a judg-
ment creditor can show that the property is not of the
value fixed and thereby that the stock subscription is
not fully paid. It is just to remark that we are much
assisted in the proper solution of these propositions
by the able and exhaustive briefs of counsel for either
side wherein the authorities *pro* and *con* are ably and
exhaustively collected, discussed and distinguished.

As to the first of these propositions, it will be
found that most of the authorities agree that the prop-
er solution depends largely on the intent and wording
of the constitutional and statutory provisions of the
various States imposing liability on the stockholders
for unpaid obligations of the corporation. We may
grant that such obligations are contractual and grow
out of the stockholders' voluntary subscription of
stock. Yet, the laws of the State authorizing the cor-

poration to be formed and to exist enter into and become a part of that contract and the liability imposed must be determined by the laws of such State.

An early and leading case on this subject, and one cited in many of the authorities hereinafter referred to, is Cable v. McCune, 26 Mo. 371, 72 Amer. Dec. 214, which arose under the statute of 1845, making stockholders liable for the "debts" of the corporation "then existing" and thereafter "contracted" for failure to publish an annual notice showing "the existing debts of the corporation." The demand sued for grew out of a tort of the corporation. It will be first noted that this statute does not deal with unpaid stock subscription, but imposes a penalty on the stockholders for failure to publish the required notice. The court held this statute to be penal and not remedial and this, as we shall see, is an important distinction. The court further held that the statute then under consideration, being strictly construed, by its terms imposed a liability for a limited kind of demands only, to-wit, those arising from contract and not for tort. In discussing this matter, the court said: "The question, however, here is, what class of demands is embraced within the words 'debts contracted?' Our Legislature did not go the length which others have in fixing the liabilities of the stockholders of these manufacturing corporations. They did not enact, as in many other States it is enacted, that the stockholders should be responsible for every liability established against the corporation, and which its assets turned out insufficient to meet. Such statutes as these, creating a general and determined liability not dependent on circumstances, becoming as it were a part of the very essence of the charter, may reasonably admit of a very different construction from a law which seems to recognize the general principle of individual irresponsibility subject to a very limited exception, and only ventures to hold out such responsibility as a penalty for a failure on the part

of its managers to perform certain acts directed in the law and supposed to furnish some advantages to the public." The court then distinguishes that case from Carver v. Braintree Man. Co., 2 Story, 432, holding that the stockholders' liability extends to tort debts, largely because of a different wording of the Massachusetts statute making it a remedial one. The Cable v. McCune case, supra, was followed in Cable v. Gaty, 34 Mo. 573, 86 Amer. Dec. 126, construing in a similar manner a then statute of this State imposing on the directors of a corporation liability, with some limitations, for debts "existing and contracted" in excess of the capital stock of the corporation. The court again remarked: "It is very clear from the language and obvious purpose of the section, that the debts, which must exceed in amount the capital stock paid in to subject the directors to liability, must be debts voluntarily created by them or under their authority. . . . The language of the section seems to apply only to one kind of liabilities of the corporation, and to make the directors liable to pay the same debts which constitute debts of the company, in excess of the capital stock paid in, and no other. The claim of the plaintiffs is not a debt voluntarily created by the directors or under their authority and is excluded by its character from the number of those for which the directors may be personally liable."

Since these decisions we have adopted a new constitution and new statutes, and it is important to note the new provisions. Section 9, article 12 of our Constitution, reads: "Stockholders, Extent of Liability.—Dues from private corporations shall be secured by such means as may be prescribed by law, but in no case shall any stockholder be individually liable in any amount over or above the amount of stock owned by him or her." The statute particularly invoked in this suit, enacted to carry out this provision of the Constitution, provides: "If any execution shall have been

issued against any corporation, and there cannot be found any property or effects whereon to levy same, then such execution may be issued against any of the stockholders to the extent of the amount of the unpaid balance of such stock by him or her owned: *provided, always;* that no execution shall issue against any stockholder except upon an order of the court in which the action, suit or other proceedings shall have been brought or instituted, made upon motion in open court, after sufficient notice, in writing, to the person sought to be charged; and, upon such motion, such court may order execution to issue accordingly; *and provided further,* that no stockholder shall be individually liable in any amount over and above the amount of stock owned." [R. S. 1909, sec. 3004.] Section 3006, Revised Statutes 1909, provides that if any corporation dissolves, leaving "debts unpaid," a suit may be maintained against the stockholders without joining the corporation and in case of judgment being paid by one or more stockholder defendants, he, or they, shall have an action for contribution against the other stockholders.

The case of Carver v. Braintree Man. Co., 2 Story, 432, written by one of our most eminent jurists, which is cited and distinguished in the Cable v. McCune case, supra, construed a statute providing that "every person who shall become a member of any manufacturing corporation shall be liable in his individual capacity for all debts contracted during the time of his continuing a member of such corporation," as is pointed out in Chase v. Curtis, 113 U. S. 452, 28 L. Ed. 1038, and Justice STORY, holding this to be a remedial statute, construes the word "debts" as equivalent to the word "dues," and the word "contracted" as equivalent to the word "incurred," and thus construed to be broad enough to include demands based on torts. Other courts, including those of Massachusetts, have since held that this is a strained construction put on

these words and in construing similar statutes have declined to follow that case.

Our Supreme Court, in the Cable v. McCune case, supra, cited and followed the case of Heacock v. Sherman, 14 Wend. 58, a New York case, which construed a statute making stockholders liable "for all debts contracted by the said corporation" to the amount of the stock he may hold "at the time the debt accrued," and that any person having "any demand" might sue such stockholders individually. That court said that the word "demand" was broad enough to include damages arising from tort, but that the whole statute shows that only "debts contracted" were intended to be included and that it did not cover damages arising for tort. So that both the cases thus cited by out Supreme Court hold that the word "dues" and "demands" are broad enough to include damages for torts and should be so held unless restricted by other words and the context. Our Supreme Court also said, in the case just cited, that it did not perceive any reason for a distinction in the kinds of liabilities imposed on stockholders; and it is apparent that the court held that only contract debts were included in the statute then construed because the same was penal and so limited the liability by its terms.

Is it not reasonable to suppose, therefore, that the framers of the new Constitution had in mind these decisions of our Supreme Court and chose the very word "dues," which it was held would include tort damages as well as contract debts, and omitted all limiting words such as "contracted" or "accrued," which, when applied to "debts," at least in penal statutes, limits the same to those arising *ex contractu?* This constitutional provision is mandatory on the Legislature and we do not think the Legislature has in any manner narrowed the "dues," which, by the constitution, are to be secured by the individual liability of the stockholders by the statutory provisions above quoted.

The statute most in point broadly provides that, when judgments cannot be collected by execution, the return of *any* execution against a corporation unsatisfied gives a basis for an order for execution against the stockholders to the amount unpaid on their stock. This certainly makes no distinction between judgments founded on torts and those founded on contract. The word "any" covers the whole field of executions on judgments. Nor do we think the word "debts" used in section 3006, supra, in reference to the liability of stockholders of dissolved corporations, having no restrictive words limiting same to those arising *ex contractu*, ought to be so construed, although this section is not here specially involved.

There are a number of decisions supporting these views in construing similar constitutional and statutory provisions of other States. The case of Rider v. Fritchey, 49 Ohio St. 285, 15 L. R. A. 513, arose under a constitutional provision almost exactly like ours, except that the liability of a stockholder is for an amount equal to his stock over and above any amount unpaid thereon. The court held this provision to be remedial and not penal and that the word "dues" includes judgments for torts. The court concedes that where the liability is imposed as a penalty for the omission to perform some act required by statute, as was the case in Cable v. McCune, supra, the weight of the authorities is the other way.

This case is followed in Flenniken v. Marshall, 43 S. C. 80, 28 L. R. A. 402, arising under an identical constitutional provision, and it is there held that the constitutional provision requiring the "dues" of a corporation to be secured by stockholders' liability is mandatory and that the statutes enacted to carry out this provision, though using the word "debts," will be held to have used it in a broad sense to include damages for torts as well as debts by contract.

In Powell v. Oregonian Ry. Co., 36 Fed. 726, 2 L. R. A. 270, it was held that a statute making a stockholder liable for the "indebtedness" of the corporation to the amount of unpaid stock is remedial and broad enough to cover a judgment founded on tort.

Henley v. Myers, 76 Kan. 723, 93 Pac. 168, 17 L. R. A. (N. S.) 779, is a well considered case arising under a constitutional provision using the word "dues" and very similar to ours and a statute enacted thereunder imposing on stockholders liability "to the creditors" for any unpaid subscriptions, and, in addition thereto, an amount equal to the par value of the stock owned by them, such liability "to be considered as asset of the corporation in the event of insolvency." The court noted the apparent conflict in the authorities and said: "Manifestly the question whether a stockholder must respond to a demand of the character here involved (tort) depends upon the language of the constitutional or statutory provisions in virtue of which the liability is asserted. The decisions for the most part turn upon the force to be given to the word 'debt.' While the statute under consideration does not use that word, much the same effect is produced by its employment of the term 'creditors' to describe those for whose benefit the remedy is furnished. (Citing cases) . . . Nearly all of these cases are controlled by one or the other of these two reasons: (1) That the statute to be construed is penal, the stockholder's liability being incurred only as a penalty for some act or omission of the directors, and on that account a strict construction is required; (2) that the statute uses some expression beyond the mere word 'debt'—for instance, 'debt contracted'—indicating that only contractual obligations are within its purview. Neither of these reasons can have any application here. The statute quoted is clearly remedial, and, beyond the bare use of the word 'creditors,' there is nothing in its language to suggest a limitation of its

benefits to any particular class of claimants; indeed, the clause making the double liability an asset of the corporation tends strongly against such restriction.'' The court then cites and approves the opinions of the Supreme Court of Ohio in Rider v. Fritchey, supra, and of South Carolina in Flenniken v. Marshall, supra. It also distinguishes the case of Ward v. Joslin, 105 Fed. 224, affirmed in 186 U. S. 142, 46 L. Ed. 1093, cited by these respondents, because of the different reading of the statute there involved and because this Federal case involves a claim based on an *ultra vires* act of the corporation. On rehearing, the court in the Henley case, supra, put its decision on the broad ground that the statutes of Kansas, two sections of which are very similar to our sections 3004 and 3006, supra, while using the terms ''debts'' and ''creditors'' must be interpreted under the constitutional mandate that ''dues of corporations shall be secured,'' etc., and be held to include judgments founded on tort. [See also Kelly v. Fourth of July Min. Co., 21 Mont. 291, 53 Pac. 959, 42 L. R. A. 621.]

There is much authority for holding that where the liability imposed on stockholders, as here, goes no further than to enforce unpaid stock subscriptions, the remedy is remedial, the amount collected is an asset of the corporation and inures to the benefit of all judgment creditors whether based on tort or contract. Thompson Corporations, Vol. 4, sec. 4845, states the rule as to the liability of stockholders for unpaid stock subscriptions in the following language: ''It ought to be conceded that in actions to enforce the stockholder's statutory liability for any amount due on his stock subscription that the term 'debt' or 'indebtedness' should include a judgment against a corporation in an action for tort.'' The rule is stated thus in 10 Cyc. 684: ''A judgment against a corporation is certainly a debt of the corporation without reference to the question whether it was founded upon a tort or

upon a contract. Hence where it is sought merely to subject what remains unpaid by the shareholder in respect of his shares, it is clear that any demand against the corporation which has been reduced to a judgment will be available as a basis of such a proceeding without reference to the nature of the original claim. If it is merged in the judgment it becomes a 'debt of record,' in the language of the common law; and upon this point there will be no difference of judicial opinion." [See also, In Re Putman, 193 Fed. 464.]

The defendants have cited a number of cases, some of which have been noted, as holding a contrary view. [Bohn v. Brown, 33 Mich 257; Tilley v. Coykendall, 71 N. Y. Supp. 457; Ward v. Joslin, 105 Fed. 224; Doyle v. Kimball, 52 N. Y. Supp. 195; Schrader v. Bank, 133 U. S. 67, 33 L. Ed. 564; Brown v. Trail, 89 Fed. 641; Kelly v. Fourth of July Min. Co., 21 Mont. 291, 53 Pac. 959, 42 L. R. A. 621; Child v. Iron Works, 137 Mass. 516, 50 Am. Rep. 328; Savage v. Shaw, 195 Mass. 571, 81 N. E. 303; Avery & Son v. McClure, 47 So. 901, 22 L. R. A. (N. S.) 256; Old Colony Boot & Shoe Co. v. Adams Co., 67 N. E. 870, 871; Esmond v. Bullard, 16 Hun. 65, 68.] Several of these cases are discussed and distinguished in the cases heretofore cited in this opinion. Space forbids that we should discuss and distinguish each one separately. A reading of the cases will show that many of them are founded on statutes which are penal and impose on the stockholder a liability over and above his stock subscription for some dereliction of the corporation or its officers. Most of them will be found to be based on statutes which, by the use of certain terms, show that the same is intended to embrace only a certain kind of liability and in favor of contract creditors. In many of them the amount collected from the stockholders is not an asset of the corporation but goes directly or indirectly to a designated class of creditors. This point is, therefore, ruled in favor of the plaintiff.

The second point for our consideration must also be ruled in favor of the appellant. We do not think our laws. contemplate or permit a corporation to be formed with a fictitious capital stock merely by designating in the articles of incorporation that the capital stock consists of property of a named valuation. Section 8, article 12, of our Constitution, reads: "No corporation shall issue stock or bonds, except for money paid, labor done, or property actually received, and all fictitious increase of stock or indebtedness shall be void." Provision is then made for the method of increasing the stock or bonded indebtedness of corporations. Section 2981, Revised Statutes 1909, provides: "The stock or bonds of a corporation shall be issued only for money paid, labor done or money or property actually received . . . but the shares of stock or bonds arising from such increase shall only be disposed of for money paid, labor done, or money or property actually received. All fictitious issues or increases of stock or of bonds of any corporation shall be void." Under these constitutional and statutory provisions our courts have in numerous cases held that corporations have no power to accept property at a fictitious value in payment of its capital stock and thereby release stockholders from paying creditors the difference between the value of the stock and the amount actually paid whether in money or property at a fair valuation. Our laws have never favored the formation of corporations with a large capital stock on paper but paid for in property at a valuation which gives it little or no real assets. We have steadily adhered to the doctrine that the capital stock of the corporation is a trust fund which must be honestly paid in and administered by those in control. [Upton v. Tribilcock, 91 U. S. 45, 23 L. Ed. 203; Van Cleve v. Berkey, 143 Mo. 109, 130, 44 S. W. 743, and cases cited.] The court there added: "In short, that it is the duty of the stockholder, and not of the creditor, to see that it

is so paid; hence, the inquiry in a case between the creditor and a stockholder when property has been paid in for the capital stock of a corporation, is not whether the stockholder believed or had reason to believe that the property was equal in value to the par value of the capital stock; but whether, in point of fact, it was equivalent.''

We have serious doubts whether under the mandatory provision of our Constitution the Legislature has power to provide that the capital stock of a corporation may be paid in property at a fixed valuation regardless of its real value. [Kelly v. Fourth of July Min. Co., 21 Mont. 291, 53 Pac. 959, 42 L. R. A. 621, 635; Security Trust Co. v. Ford, 79 N. E. 474, 476.] We certainly should not impute to it an intention to do so unless forced thereto by the plain provisions of some legislative act. The act of 1911, p. 148, amending section 3339, Revised Statutes 1909, which is claimed to accomplish this result, provides: ''The articles of agreement shall set out: . . . the number of shares into which it is divided, and the par value thereof; that fifty per cent. of the authorized capital stock thereof has been in good faith subscribed and actually paid up in lawful money of the United States or in property of the *full value thereof,* and is in the custody of the persons named as the first board of directors or managers; . . . *Provided,* that if any part of the capital stock is paid in property, the articles of agreement must give an itemized description of such property, setting out the *cash value* of each item thereof, and such itemization shall show: (a) if such property be real estate, the exact description by metes and bounds and location of such real estate, and the *actual cash value* of each tract; (b) if such property be personal property, such itemization shall give the location of each class of personal property and the *actual cash value* of each class of personal property.

185MoApp43

No stock shall be issued by the corporation, except such as is *actually paid for at its par value, in cash, or in property of a cash value equal to the par value of the stock*. All stock of the corporation, not subscribed and paid for at the time of its organization, may be sold at its par value by said corporation and the officers of said corporation shall, upon the completion of the sale of each one-fourth of the unsubscribed stock thereof, report to the Secretary of State the amount of stock sold and whether the same has been *sold for cash or for property and the value and itemization thereof*, as provided herein for the articles of agreement, and such report shall be *sworn* to by all of the officers and directors of such corporation before some officer of this State having a seal.'' The italics are ours of course. We fail to see anything in this amendment indicating an intention to permit property to be taken at a fictitious value merely because described in and the value at which it is taken set forth in the articles of incorporation. It reads to the contrary. It is more likely that the Legislature, knowing the proneness of stockholders to pay for their stock in property at an inflated valuation, required that when so paid the property and value should be given, so as to more effectually hold them to their liability for overvaluation. [Trust Co. v. McMillan, 188 Mo. 547, 567, 87 S. W. 933.]

Defendants contend that as our statutes, sections 2975 and 3340, Revised Statutes 1909, provide that a copy of the articles of incorporation shall be filed with the Secretary of State and recorded in the county where the corporation is located, such record gives constructive notice to all the world of the fact that the stock is fully paid in property of the value given. Defendants then rely on a line of cases holding that where a person deals with a corporation, knowing that it has accepted certain property in full payment of stock, he is estopped to claim that the stock is not fully paid up. [Berry v. Rood, 168 Mo. 316, 334, 67

S. W. 644; Trust Co. v. McMillan, 188 Mo. 547, 567, 87 S. W. 933.] We do not find any statutory provision making these records notice to the world of the facts therein stated, as is usual in the various recording acts. It is by virtue of statutes that such records are made, constructive notice taking the place of the actual notice underlying the doctrine of the cases cited. We do not see how such records could give notice that the value stated and sworn to is a fictitious one. Much actual investigation would have to be made to obtain that knowledge. [Security Trust Co. v. Ford, 79 N. E. 474, 477.] It is said in Trust Co. v. McMillan, supra, that persons dealing with corporations have a right to assume, in the absence of actual knowledge to the contrary, that the stock is fully paid for in money or money's worth. Estoppel is based on actual knowledge of the fact, or such lack of knowledge as comes from closed eyes and is equivalent to actual knowledge, or constructive knowledge made so by law. We also find that it is provided in the Acts of 1911, above referred to, that the stock of a corporation may be sold for property after the articles are recorded and a report then made to the Secetary of State; so that, in such case, there would be no record, outside of the report to the Secretary of State, showing the property or its value. We think it would be extremely harsh to apply this doctrine of estoppel to a widow whose claim arises from defendants' negligence resulting in her husband's death.

The case will, therefore, be reversed and remanded, with directions to set aside the judgment on demurrer and overrule the same and proceed in accordance with this opinion.

*Robertson, P. J.,* and *Farrington, J.,* concur.