**GASKINS et al. v. BONFILS et al.**
No. 9296.

District Court, D. Colorado.
Sept. 1, 1933.

Joel E. Stone, of Denver, Colo., and Watson, Ess, Groner, Barnett & Whittaker, of Kansas City, Mo., for plaintiffs.

Robert L. Stearns, Cass E. Herrington, Cass M. Herrington, Mason A. Lewis, and James B. Grant, all of Denver, Colo., for defendants.

SYMES, District Judge.

On March 31, 1933, the complainants suggested the death of defendant Fred G. Bonfils on February 2, 1933. Thereupon a writ of scire facias was issued directing the executors of the last will and testament of said Bonfils to show cause.why they should not be made parties defendant herein. The executors, "appearing specially * * * and for no other purpose," moved to quash the writ. The motion has been argued and exhaustively briefed. Although appearing for the purpose of the motion only, they raise questions of law open only to parties to the suit. In order to expedite the cause, we have considered them.

A little history is in order. The bill was filed July 17, 1930, by Florence Gaskins, a resident of Cincinnati, Ohio, "on behalf of herself and all other judgment creditors of the Post Printing and Publishing Company, a corporation of Missouri," against Fred G. Bonfils, F. G. Bonfils Foundation, the Boma Investment Company, the Dome Investment Company, and the Post Printing & Publishing Company, all Colorado corporations.

It alleges that the defendant Fred G. Bonfils (now deceased), and one H. H. Tammen, organized the Post Printing & Publishing Company, under the laws of Missouri; that they owned all but three shares of the capital stock. The name of this company was later changed to the Star Printing & Publishing Company; that in 1925 she filed a suit in the federal court for the Western district of Missouri against said Post Printing & Publishing Company of Missouri to recover $50,000 for an alleged libel published by the Kansas City Post, a newspaper published in Kansas City by the said Post Printing & Publishing Company, and that after a jury trial, and on the 15th day of December, 1926, she recovered a judgment of $32,500, which has become final; that execution was issued in Missouri and returned nulla bona, and that no part of the judgment has been paid.

On September 25, 1930, Frank C. Seested, a citizen and resident of Kansas City, Mo., filed his intervening petition herein, alleging that in the year 1921 he filed a suit in the state court of Kansas City, Mo., against said Post Printing & Publishing Company of Missouri on account of an alleged libelous publication in the said Kansas City Post, and defendant appeared; that after a jury trial, and on November 18, 1926, he recovered judgment for $200,000. An execution was issued thereon in Missouri and returned nulla bona. Thereafter said judgment was affirmed, after being reduced to $125,000, by the Supreme Court of Missouri. 326 Mo. 559, 31 S.W. (2d) 1045. Said Seested asked to be allowed to prosecute as an intervener in this cause.

The complaint and petition are identical in charging that Bonfils and Tammen were the sole stockholders, officers, and directors of said Post Printing & Publishing Company of Missouri; in absolute control at the time of the publication of the libels complained of; and that after the commencement of the said libel suits in Missouri, the Missouri corporation, through the said Bonfils and Tammen, as officers and directors, sold the assets of the corporation, consisting of the newspaper business, for $1,250,000 cash paid, and that thereafter the said Fred G. Bonfils, in collusion with the other officers and directors, wrongfully took the said proceeds to Colorado and distributed them to himself, the other stockholders and the defendant corporations, of which, it is alleged, the said Bonfils and his family owned and controlled the great majority of the stock; in short, converted said fund to their own use and benefit, in violation of the rights of creditors of the Post Printing & Publishing Company of Missouri, including complainants. All of which was to prevent the creditors of the Missouri publishing corporation from following said funds and subjecting the same to the payment of their claims and the judgments. That ever since the said sale the Missouri corporation has had no property, money, or estate in Missouri or elsewhere, subject to judgment or legal process; and that it immediately ceased to maintain any office or to carry on business in Missouri or elsewhere, and that there is no officer or director in Missouri or Colorado upon whom service can be obtained; that there is no adequate remedy at law available for satisfying said judgments.

The chancellor is asked to find that the defendants have received and hold funds belonging to the Missouri corporation which should be applied to the payment of the complainants' judgments, and the claims of other creditors who may join, etc.

The defendants, before the death of Bonfils, answered on the merits, alleging, among other things, that the Gaskins alleged libel was published June 18, 1918, suit filed thereon April 22, 1925, and judgment recovered December 15, 1926; that the Seested libel was published November 2, 1921, suit thereon filed November, 1921, and judgment recovered November 16, 1926. The sale of the assets of the Missouri corporation was made on May 17, 1922.

The first point is: "No judgment against the Post Printing and Publishing Company of Missouri was obtained in Colorado and no service thereon was had in Colorado with the return unsatisfied. Consequently, the necessary foundation for the creditors' bill is lacking and the action must fail."

This defense was not raised in the answer. Nevertheless we will consider it.

The argument briefly is: That a Missouri judgment is insufficient to support a creditors' bill in the federal court in Colorado, unless or until the Missouri judgment is reduced to a Colorado judgment and an execution returned nulla bona. This statement is good law, according to the authorities cited, of which it is only necessary to notice National Tube Works v. Ballou, 146 U. S. 517, 13 S. Ct. 165, 36 L. Ed. 1070, and 15 C. J. 1394, §§ 36 and 37. In the Ballou Case, supra, a Massachusetts corporation filed suit in the federal court in New York (C. C.) 42 F. 749, against a citizen of that state on a judgment obtained in the state court of Connecticut, upon which an execution had there been issued and returned unsatisfied. The plaintiff sought to compel the defendant to pay what he owed on his subscription to stock in a Connecticut corporation, and have it applied to the debts of the latter. Mr. Justice Blatchford, speaking for the Supreme Court, after noting that the bill did not allege any judgment in New York, or any effort to obtain it, or that it was impossible to obtain one, said, page 523 of 146 U. S., 13 S. Ct. 165, 166, 36 L. Ed. 1070: "Where it is sought by equitable process to reach equitable interests of a debtor, the bill, unless otherwise provided by statute, must set forth a judgment in the jurisdiction where the suit in equity is brought, the issuing of an execution thereon, and its return unsatisfied, or must make allegations showing that it is impossible to obtain such a judgment in any court within such jurisdiction."

See, also, Scott v. Neely, 140 U. S. 106, 11 S. Ct. 712, 35 L. Ed. 358; Hollins v. Brierfield Coal & Iron Co., 150 U. S. 371, 14 S. Ct. 127, 37 L. Ed. 1113, and Pusey & Jones Co. v. Hanssen, 261 U. S. 491, 43 S. Ct. 454, 67 L. Ed. 763. The latter case, after pointing out that the creditor has no right whatever in equity until he has exhausted his legal remedy, holds (page 497 of 261 U. S., 43 S. Ct. 454, 67 L. Ed. 763) he may, by a creditors' bill, remove any obstacle to satisfying his execution at law, may reach assets equitable in their nature, or by means of an injunction or receiver, protect his debtor's property from misapplication or waste in order to preserve property which may ultimately be applied toward the satisfaction of substantive rights.

■ Counsel for the executors correctly anticipated that the question would turn upon the exception to this rule, recognized in the Ballou Case, supra, and elsewhere; so point out that the bill contains averments that Fred G. Bonfils was an officer, director, and stockholder of the Missouri corporation; that he was a resident and physically present in Colorado for many years, and that service was made upon him personally in the instant case; that service could have been had on him in an action brought in Colorado against the Missouri corporation, citing section 2254, Comp. Laws of Colo. 1921, and section 40 of the Code of Civil Procedure, Colo., as amended by the Session Laws of Colorado 1927 (page 671).

This latter provision, providing a method for service on foreign corporations, presumes that the latter is doing business within Colorado, a fact not present in the instant case. This question, however, is settled by the federal decisions, holding that the mere presence of an officer, director, or stockholder in a foreign state does not render such corporation liable to service, where it is not doing business, maintains no office, etc., therein; that is to say, a traveling officer or stockholder does not take the corporation with him beyond the jurisdiction of the state of its creation. Rosenberg Bros. & Co. v. Curtis Brown Company, 260 U. S. 516, 43 S. Ct. 170, 67 L. Ed. 372. Bank of America v. Whitney Central National Bank, 261 U. S. 171, 43 S. Ct. 311, 312, 67 L. Ed. 594, holds that jurisdiction "flows from the fact that the corporation itself does business in the state or district in such a manner and to such an extent that its actual presence there is established."

James-Dickinson, etc., Co. v. Harry, 273 U. S. 119, 47 S. Ct. 308, 71 L. Ed. 569. See, also, Toledo Rys. & Light Co. v. Hill, 244 U. S. 49, 37 S. Ct. 591, 61 L. Ed. 982. There the summons was served upon a vice president and director of an Ohio corporation residing in New York, the state where the service was attempted. Consolidated Textile Corp. v. Gregory, 289 U. S. 85, 53 S. Ct. 529, 77 L. Ed. 1047, holds, a foreign corporation is not subject to service in another state unless it is disclosed that it was carrying on business there at the time of the attempted service, and was present by its duly authorized officers or agents within the state.

■ The allegations of fact in the bill and petition which we have recited, supra, are, in our opinion, sufficient to bring the instant case within the exception, especially in view of the fact the answer, filed before Bonfils died, could have, but does not, allege facts making a contrary holding proper. Judge Lewis, in Williams v. Adler-Goldman Commission Co. (C. C. A.) 227 F. 374, marshals the authorities and points out (page 375 of 227 F.), that the condition precedent of "A prior judgment at law and unavailing process are not conditions on which equitable jurisdiction is founded. They do not constitute the basis on which the right to equitable relief rests. They are rather an element in procedure and not in equitable right."

And that the exceptions to the rule, the one under discussion among them, are recognized and have become as well established as the rule itself. Compare Allan v. Moline Plow Co. (C. C. A.) 14 F.(2d) 912.

■ The principle we are discussing requires plaintiff to show he has exhausted his legal remedies in order to make equitable remedies available. Proof of a judgment at law and a fruitless execution is only one of many ways of proving this; showing the debtor to be insolvent and that the issuance of an execution would be of no practical utility is another; likewise insolvency may be shown otherwise than by a judgment and an execution nulla bona. Neither law nor equity requires an idle ceremony, and assuming, for the purpose of this motion only, that the allegations of fraud are true, equity will not help the alleged fraud by hesitating between competing remedies. See, generally, Case v. Beauregard, 101 U. S. 688, 25 L. Ed. 1004; Sage v. Railroad Company, 125 U. S. 361, 8 S. Ct. 887, 31 L. Ed. 694.

Stewart v. Ahern (C. C. A.) 32 F.(2d) 864, a California case, is not in conflict with these views. There it was merely alleged that it was impossible to obtain a judgment against the defendant corporation in California because it had no status there, and there was no jurisdiction. The Circuit Court of Appeals said that these allegations were mere conclusions of law, and that no attempt had been made at the trial to prove that process could not have been served on some officer or agent in California; so after observing that there was both a failure of allegation and proof tending to show that the appellee had exhausted his legal remedies, the court held that the case did not fall within the exception of the Ballou Case, supra.

■ The second point is: "Complainants have no right which can be revived against these moving parties."

Equity Rule 45 (28 USCA § 723) provides a new procedure for revival in place of the old bill of revivor, but whether a par-

ticular party is the proper party is still a question of law for the court. If the cause of action survives, the motion is granted as a matter of right. Ex Parte Slater, 246 U. S. 128, 38 S. Ct. 265, 62 L. Ed. 621.

Section 778, 28 USCA, provides that if the plaintiff, petitioner, or defendant, in any suit in the United States courts, dies before final judgment, his executor, in case the cause of action survives at law, may prosecute or defend such action, and final judgment may be rendered against the estate of such deceased party, etc.

In the case at bar the gravamen of the bill is that decedent Bonfils, and other defendants, officers and directors in the Post Printing & Publishing Company of Missouri, wrongfully distributed to themselves, and possess, assets of the corporation which should be subjected to the payments of the judgments of the complainant and intervener.

Counsel for the executors refer to a Missouri statute, section 4622, Revised Statutes Missouri 1929 (Mo. St. Ann. § 4622), which made the officers and directors of a defunct corporation trustees to settle its affairs and distribute its assets among the stockholders, after paying the debts due and owing by such corporation, and argue that a mere unadjudicated claim for libel is not a debt due and owing, as held in Cable v. McCune, 26 Mo. 371, 72 Am. Dec. 214 (decided in 1858). This case arose under a statute making stockholders liable for "debts" of the corporation "then existing," for failure to publish an annual notice showing "the existing debts of the corporation." The demand sued on grew out of a tort of the corporation.

In Rogers v. Mining Company, 185 Mo. App. 659, 171 S. W. 676 (decided in 1914), the court pointed out that the Cable Case held that statute to be strictly penal, imposing liability for a limited kind of demands only. It calls attention to the new Missouri Constitution and statutes extending stockholders' liability to cover "dues," and decides that the liability there referred to includes judgments against the corporation arising out of torts, as well as ex contractu.

Definitions of "dues" and similar words used in various statutes on this subject are collected in 14 C. J. p. 1032, § 1605: A liability imposed by statute for "debts" will not be limited to what are commonly known as "commercial debts." Where the statute makes stockholders personally liable for "debts" and "civil liabilities," it is not essential that a claim arising ex contractu should be liquidated, and, p. 1036, § 1612: Individual liability has been imposed on stockholders for unliquidated claims arising out of tort, under statutes making them liable for corporate "debts and liabilities," and for "debts contracted"; and so a stockholder may be individually liable for a judgment against the corporation for tort under a statute imposing liability for "acts and contracts," and, under a statute imposing liability for "debts" or "indebtedness," a stockholder is liable for judgments against the corporation founded on tort; and in section 1614 it is stated that under constitutional and statutory provisions, using the term "dues from corporations," the liability extends to judgments and demands arising out of torts, and that statutes of this kind are to be construed broadly. It would thus seem the distinction that formerly existed between actions arising out of tort or ex contractu under statutes imposing stockholders' liability has in a large measure disappeared.

Admittedly whether this cause of action survives depends, however, primarily upon the laws of the forum. Luster v. Martin (C. C. A.) 58 F.(2d) 537, and authorities cited, including Portland Gold Min. Co. v. Stratton's Independence, 196 F. 714, a decision of this court by Judge Lewis.

The policy of Colorado is indicated by section 15 of the Colorado Code, providing that an action does not abate by the death of the party if the cause of action survives and may, upon motion, be continued against his representatives, etc.

And Comp. Laws of Colo. 1921, § 5383: "All actions in law whatsoever, save and except actions on the case for slander or libel, or trespass for injuries done to the person, and actions brought for the recovery of real estate, shall survive to and against executors, administrators and conservators."

This section has been construed in Swartz v. Rosenkrans, 78 Colo. 167, 240 P. 333, citing with approval Portland Gold Min. Co. v. Stratton's Independence, supra, and specifically deciding that as far as Colorado is concerned an action in tort arising out of the violation of property rights survives; that is to say, in effect, the death of a party will not abate an action against him to recover assets alleged to have been unlawfully taken.

See, also, Kelley, Adm'x, v. Union Pacific Railway Co., 16 Colo. 455, 27 P. 1058, holding: "The general rule in this state is that actions at law do not die with the person; the exceptions are specified by statute."

And Mumford v. Wright, 12 Colo. App. 214, 55 P. 744, and, generally, 1 C. J. p. 185, §§ 339, 340, shows the many modifications of the common-law rule that a cause of action for injury either to the person or property of another does not survive the death of a person to or by whom the wrong was done; stating that where the estate of the wrongdoer was benefited his personal representatives were liable—citing Patton v. Brady, 184 U. S. 608, 22 S. Ct. 493, 46 L. Ed. 713, and Snyder v. Wabash, etc., Ry. Co., 86 Mo. 613.

The latter case holds that a cause of action arising out of a tort to property is assignable, because the test to be applied in determining the assignability of a cause of action is whether it survives and passes to the personal representative of a decedent, and the court follows, quoting Mr. Pomeroy in his work on Remedies and Remedial Rights, what is there stated to be the general American doctrine "that all causes of action arising from torts to property, real or personal—injuries to the estate, by which its value is diminished, do survive."

For a good statement of this rule, see, also, Pomeroy's Equity Jurisdiction (4th Ed.) § 1275, vol. 3.

Pierce v. U. S., 255 U. S. 398, 41 S. Ct. 365, 65 L. Ed. 697, is referred to in both briefs. While not in point on the facts, it announces some general principles believed to be pertinent. After pointing out that a judgment creditor's bill is in essence an equitable execution, Justice Brandeis states that a corporation cannot disable itself from liability for its acts by distributing its property among its stockholders, and that if it attempts so to do claims may be reduced to judgment and satisfied out of assets in their hands, and the rule is not limited to judgment arising out of civil proceedings. Furthermore, that it is no objection to a creditor's bill that the judgment against the corporation was not entered until a year after it had divested itself of the property sought to be reached by the suit, and page 403 of 255 U. S., 41 S. Ct. 365, 367, 65 L. Ed. 697: "But when a corporation divests itself of all its assets by distributing them among the stockholders, those having unsatisfied claims against it may follow the assets, although the claims were contested and unliquidated at the time when the assets were distributed. It is true that the bill to reach' and apply the assets distributed among the stockholders cannot, as a matter of equity jurisdiction and procedure, be filed until the claim has been reduced to judgment and the execution there-

on has been returned unsatisfied. * * * But, as a matter of substantive law, the right to follow the distributed assets * * * applies not only to those who are creditors in the commercial sense, but to all who hold unsatisfied claims. A corporation cannot by divesting itself of all property leave remediless the holder of a contingent claim, or the obligee of an executory contract."

In this discussion of remedies and procedure we must not lose sight of these essential facts, to wit, that plaintiffs' causes of action in this court are based upon judgments, one obtained in the federal court of Missouri, and the other in the state court, and affirmed by the highest court of that state, in each of which the judgment debtor appeared—all before the death of Bonfils; and that when they present them in this court, the causes of action are merged in the judgments which are entitled to full faith and credit, and cannot be collaterally attacked here, except, perhaps, for fraud or lack of jurisdiction.

We conclude that the motion to quash the writ of scire facias should be denied, and it is so ordered.